

DA 10-0319

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 105

RUSTY JAMES ROGERS,

        Petitioner and Appellant,

   v.

STATE OF MONTANA,

        Respondent and Appellee.


APPEAL FROM:    District Court of the Eighteenth Judicial District,
                      In and For the County of Gallatin, Cause No. DV 08-985A
                      Honorable Holly Brown, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

                Chad M. Wright, Hooks & Wright, Helena, Montana

        For Appellee:

                Steve Bullock, Montana Attorney General; Tammy K. Plubell, Assistant
                Attorney General, Helena, Montana

                Marty Lambert, Gallatin County Attorney; Ashley Whipple, Deputy County
                Attorney, Bozeman, Montana


                        Submitted on Briefs:   March 29, 2011

                                      Decided:  May 17, 2011


Filed:

                _____

                             Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Rusty Rogers (Rogers) appeals from an order of the Eighteenth Judicial District Court, Gallatin County, denying his petition for post-conviction relief.  We affirm.

¶2     We review the issues on appeal:

¶3     *Did Rogers receive ineffective assistance of counsel during his trial and on direct appeal?*

¶4     *Did prosecutorial misconduct violate Rogers's due process rights?*

### FACTUAL AND PROCEDURAL HISTORY

¶5     Rogers hired attorney Suzanne Marshall (Marshall) to represent him after the State of Montana (State) charged him with two counts of sexual assault for touching the vaginal areas of his co-worker's two stepdaughters.  A jury convicted Rogers after a two-day trial, and the court sentenced Rogers to twenty years in the Montana State Prison with ten years suspended. Rogers retained Marshall on direct appeal.  We affirmed the District Court in *State v. Rogers,* 2007 MT 227, 339 Mont. 132, 168 P.3d 669.  Rogers then petitioned the District Court for post-conviction relief.  The court denied Rogers's petition in a 34-page order issued on May 17, 2010.  Rogers appeals.

¶6     The State charged Rogers after learning from Maggie Holliday that Rogers had slipped his hands inside the pants of her 4-year-old and 6-year-old daughters.  The police videotaped the initial police station interview with Rogers.  Rogers denied assaulting the girls.  When the interviewing detective told Rogers that "little kids . . . don't lie about those kinds of things," Rogers ended the interview and requested an attorney.  The police then

arrested Rogers. Rogers attempted to remove the handcuffs with a key he had in his pocket. The police officer informed Rogers that additional charges would be filed against him for attempting to remove the handcuffs. The video recording device recorded the entire interaction.

¶7    Marshall received the videotape within two weeks of being retained as Rogers's counsel. She did not file any pretrial motions related to the handcuff key incident on the video. She believed that she could object at trial because of the State's lack of notice to file other bad acts evidence. Rogers argues that Marshall's treatment of the videotape constituted ineffective assistance of counsel for several reasons that will be discussed as necessary.

¶8    Rogers and his wife told Marshall they believed that the girls had been coached into making the allegations against Rogers. Marshall discussed the possibility of retaining an expert psychologist to testify about the influence of coaching techniques and effects on young children. Marshall discussed the decision with Rogers's wife on September 9, 2005, and then with Rogers and his parents on September 12, 2005. Marshall believed that she made Rogers fully aware of the expert psychologist's role in the coaching defense. Marshall filed a witness disclosure for the psychologist about one month before trial. Rogers, or his parents on his behalf, provided an advance payment of $750 for the psychologist's services. Rogers now argues that Marshall did not consult him before deciding to hire the psychologist, that he did not meet with the psychologist before the trial, and that he would not have agreed with the decision "because of the extremely short amount of time to prepare

3

before trial."

¶9     The State provided notice that it would call licensed clinical professional counselor Zan Hoxsey as a rebuttal witness to the psychologist. Hoxsey had seen the girls over the course of 14 one-hour therapeutic counseling sessions. Marshall did not request any of Hoxsey's records before trial. Rogers claims that Marshall's handling of Hoxsey's testimony constituted ineffective assistance of counsel.

¶10    Rogers also makes several arguments that alleged failures to object to evidence admitted to the jury constituted ineffective assistance of counsel. He asserts that Marshall failed to object to vouching, hearsay, and other bad acts evidence. Rogers also asserts that Marshall failed to preserve a trial record. These assertions will be further discussed as necessary.

¶11    After Rogers filed his pro se petition for post-conviction relief, the District Court ordered the State to file a response. The State responded and submitted an affidavit from Marshall that explains her decisions and performance. The court analyzed the many claims and denied Rogers's petition. Rogers appeals.

STANDARD OF REVIEW

¶12    We review a district court's findings of fact for clear error in post-conviction relief proceedings and its conclusions of law for correctness. *Foston v. State,* 2010 MT 281, ¶ 10, 358 Mont. 469, 245 P.3d 1103. Ineffective assistance of counsel claims present mixed questions of law and fact that this Court reviews de novo. *Id*. We review discretionary rulings in post-conviction relief proceedings, including rulings related to whether to hold an

4

evidentiary hearing, for an abuse of discretion. *Hamilton v. State*, 2010 MT 25, ¶ 7, 355 Mont. 133, 226 P.3d 588. We will not review arguments that a petitioner presents for the first time on appeal. *Foston*, ¶ 10.

## DISCUSSION

¶13 *Did Rogers receive ineffective assistance of counsel during his trial and on direct appeal?*

¶14 Rogers alleges that his trial counsel delivered ineffective assistance of counsel for several separate reasons. Rogers identifies alleged deficiencies in Marshall's pretrial investigation, use of expert testimony, decisions regarding objections to vouching and prosecutorial misconduct, admissibility of evidence, and other objections to trial irregularities. Rogers raises two additional ineffective assistance of counsel claims that allegedly occurred during Marshall's representation of Rogers on direct appeal. We address the many claims in turn.

¶15 We determine whether counsel rendered ineffective assistance by applying the two-part test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Foston*, ¶ 11. The defendant must demonstrate that counsel's representation was deficient, and that counsel's deficiency prejudiced the defense. *Id.* A petitioner for post-conviction relief must prove by a preponderance of evidence that he or she is entitled to relief. *Id.* at ¶ 12.

¶16 The court must determine whether, in light of all the circumstances, the identified acts or omissions fell outside the wide range of professionally competent assistance. *Id.* (citing

5

*Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066). This Court has recognized that every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Foston*, ¶ 12 (citing *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). A petitioner who argues that trial counsel's failure to object rendered counsel ineffective must show that counsel's trial objection would have been proper and that the court likely would have sustained the objection. *Id.* at ¶ 13. This Court will not presume prejudice. *State v. Tadewaldt*, 2010 MT 177, ¶ 9, 357 Mont. 208, 237 P.3d 1273. Prejudice occurs when a reasonable probability exists that, but for the counsel's error, the result of the proceeding would have been different. *State v. Savage,* 2011 MT 23, ¶ 22, 359 Mont. 207, 248 P.3d 308.

a. Pretrial Investigation

¶17 Rogers argues generally that the District Court should have held an evidentiary hearing because disputed issues of fact existed. Rogers alleges that Marshall failed to obtain the counseling records of Zan Hoxsey, the girls' therapeutic counselor, as part of her pretrial investigation. The State disclosed one week before trial that it would call Hoxsey as a rebuttal witness in response to Rogers's announcement that he would call an expert psychologist witness. The State had not intended previously to call Hoxsey in its case-in-chief and had not affirmatively disclosed the nature of Hoxsey's relationship with the girls or whether any counseling records existed.

¶18 Marshall consulted with the psychologist to develop a strategy for the cross-

examination of Hoxsey. The psychologist advised Marshall to distinguish Hoxsey as the girls' treatment provider from a person who conducts an independent assessment of the children's allegations. The psychologist told Marshall that Hoxsey, as the children's therapeutic treatment provider, would not have the appropriate distance to make objective judgments concerning whether the children's disclosure had been coached or had been made voluntarily.

¶19 Marshall intended to highlight that Hoxsey had served the role of a therapeutic counselor for the girls. Marshall hoped to establish that Hoxsey's personal feelings toward the children that had developed during the counseling sessions had biased her evaluations and affected the credibility of her assessments as to whether the children had been coached. Marshall acknowledges that she did not request or receive any counseling records and that she did not know whether any records even existed. Marshall believes that the records would have had little effect on the cross-examination of Hoxsey. The psychologist had advised Marshall that additional documents that may have reflected Hoxsey's conversations with the girls after the initial police interview would not be necessary. The psychologist instead advised that she would need to review only the initial police interview during which the girls had made their disclosures.

¶20 Rogers asks this Court to assume that counseling records existed and that further examination of the records would have revealed additional evidence that could have cast doubt on Hoxsey's assessment and credibility. Rogers further asks that we presume that Marshall's failure to request or receive any notes that might have existed prejudiced his

7

defense. We will not presume that Marshall could have uncovered additional evidence had she received the counselor's notes without any support in the record.

¶21 Rogers has not pointed this Court to instances in the record, including Hoxsey's direct examination or Marshall's cross-examination of Hoxsey, that suggest that counseling records existed, let alone contained any potentially exculpatory material. Marshall made a strategic decision to focus on the nature of Hoxsey's relationship with the children and thereby demonstrate Hoxsey's inability to be objective. Marshall's strategic decision made the additional investigation into Hoxsey's records unnecessary. *Strickland,* 466 U.S. at 690-91, 104 S. Ct at 2066. Rogers has not explained how his defense would have differed had Marshall conducted further pretrial investigation. We will not presume that Marshall's decision or failure to forego additional pretrial investigation into Hoxsey's relationship with the girls caused Rogers prejudice. *Tadewaldt,* ¶ 9.

¶22 We affirm the District Court's conclusion that Marshall's decision fell within the wide range of professionally competent assistance required of Marshall. *Foston,* ¶ 12. The court properly exercised its discretion without an evidentiary hearing on the relevancy of the counselor's notes because Marshall's strategy involved exposing the relationship between the girls and the counselor. Rogers provides no other examples of allegedly disputed factual issues and has failed to prove that the District Court abused its discretion by not holding an evidentiary hearing. *Hamilton,* ¶ 7.

b. Strategy Involving the Expert Psychologist

¶23 Rogers next alleges that Marshall's use of the expert psychologist constituted

8

ineffective assistance of counsel. Marshall had consulted another attorney about the use of the psychologist's expert testimony, discussed the strategy with Rogers and his parents, and obtained advanced payment for the psychologist. The expert has a doctorate in psychology, practices as a licensed clinical psychologist, and regularly testifies in criminal cases involving sexually abused children.

¶24 Rogers criticizes Marshall's decision to employ the psychologist because it required Marshall to show the videotaped interviews of the girls to the jury. Marshall showed the jury the videos as part of her strategy to establish the suggestive questioning technique used by the detective. Rogers complains that Marshall's decision opened the door to an overwhelming amount of prior consistent statements and that Marshall's failure to limit the trial to live testimony constituted deficient performance.

¶25 One of Marshall's primary defense strategies focused on showing the ways that the mother, prosecutor, detective, and counselor had coached the girls. Marshall relied on her expert psychologist to explain the coaching techniques and effects, particularly the influence that simple questions or suggestive statements can have on young children in police interviews. The decision to have the psychologist explain to the jury how suggestive interviewing techniques can affect children's testimony constitutes a strategic decision well within the reasonable range of effective assistance of counsel. *Strickland,* 466 U.S. at 689-90, 104 S. Ct. at 2065-66.

c. Objections to Vouching Testimony

¶26 Rogers next argues that Marshall failed to object to the testimony of the girls' mother

and counselor in which they allegedly improperly vouched for the girls' credibility. An expert witness may not comment on the credibility of the victim's testimony. *State v. St. Germain,* 2007 MT 28, ¶ 27, 336 Mont. 17, 153 P.3d 591. The jury decides the witness's credibility and the weight to be given to their testimony. *State v. Brodniak,* 221 Mont. 212, 222, 718 P.2d 322, 329 (1986). A narrow exception exists when a minor victim exhibits contradictory behavior in a sexual abuse case. *State v. Geyman,* 224 Mont. 194, 200-01, 729 P.2d 475, 479-80 (1986).

¶27 Rogers points to statements by the mother and counselor that verify that the girls did not change their story. For example, the girls' mother stated that the girls had "always said the same thing" and that the younger daughter knew "exactly what she's saying" and had always "said the exact same thing, this exact same way, the exact same place, and it's always been Rusty." Similarly the girls' counselor stated that the girls had been "absolutely consistent" about the facts of the alleged assault. The counselor opined that the girls' mother and the prosecutor had not coached the girls.

¶28 We disagree that these alleged statements constitute vouching. The mother and the counselor verified the consistency of the girls' allegations in response to the questions about whether the girls had fabricated the story due to coaching. Marshall did not perform deficiently when she elected not to object to the mother's and counselor's admissible statements.

¶29 Rogers similarly alleges that the prosecutor vouched for the girls in closing argument by stating "I believe that child." Rogers's contention appears correct at first glance. A

10

review of the statement in context reveals, however, that Rogers quotes the phrase out of its original context. "[T]hat child," to which the prosecutor refers, does not refer to either of the girls Rogers assaulted. The prosecutor's full statement included, "[w]ell, then, take me back to the '80s because I believe that child." The prosecutor was referring to a criticism by Rogers's expert that the State wanted the jury to return to the 1980s when people believed everything children said. The prosecutor's statement, in context, constitutes permissible argument regarding the credibility of children generally, rather than the testimony of the two girls specifically.

¶30     Rogers also takes issue with the prosecutor's comments that the girls' consistency was "remarkable" and "rock solid." These comments referred to the consistency of the girls' account of the facts, rather than to vouching for the girls' honesty and credibility. Marshall did not object because she believed that the prosecutor's statements were appropriate.

¶31     Marshall based Rogers's defense in large part on the notion that the girls had been coached to accuse Rogers. We agree with Marshall and the District Court that under these circumstances a prosecutor can point to the consistency of the accounts of minor victims throughout the proceedings without violating the vouching rule.

    d.  Admissibility of the Video of Rogers's Police Interview

¶32     Rogers next argues that Marshall should have moved to suppress or redact portions of his videotaped interview with law enforcement. Rogers argues that the detective's questions vouched for, and bolstered, the girls' accusations. For example, the detective stated that "little kids . . . don't lie about those kinds of things. That's something that's happened to

11

them." Marshall stipulated to the showing of these portions of the video to support the defense theory that the detective had a predisposed belief that Rogers had assaulted the two girls. Rogers fails to demonstrate that Marshall's decision to show the jury the video constituted deficient performance or prejudiced his case.

¶33 Rogers also argues generally that the statements of another officer on the videotape constituted inadmissible hearsay. Rogers fails to identify what statements were made and how they prejudiced him. The District Court correctly denied Rogers's claim about this other officer's statements because Rogers's claim offers no authority or analysis as required by § 46-21-104(2), MCA.

e. Objecting to the Recess in the Girl's Testimony

¶34 Rogers next alleges that Marshall's decision not to object to a recess in the older girl's testimony constituted ineffective assistance of counsel. The 7-year-old girl had locked up on the stand. She initially testified only that something happened to her when she had sat on the couch next to Rusty and that she could not remember it. The prosecutor asked for a recess so the girl could go give her mom a hug. The girl met with the girl's mother and the prosecutor in the hallway. Marshall and Rogers remained in the courtroom with the jury.

¶35 When the girl returned to the stand, she identified Rogers as the man who had touched her inside her clothing on the spot where she goes to the bathroom. Marshall did not object or make a record about what the prosecutor and mother had talked about with the girl in the hallway. Marshall explained that she believed the jury had observed for itself the coaching effect on the girl's testimony when the girl left the courtroom. Marshall further believed that

12

extensive questioning would not reveal additional evidence helpful to the defense. Marshall decided to keep the cross-examination brief because of the girl's young age and because she did not know what the girl might have said.

¶36 The validity of this explanation for Marshall's inaction under these circumstances causes the Court to pause. Another course of action would have been for Marshall to cross examine the girl regarding her communication in the hallway with the prosecutor and her mother. As the District Court noted, however, Marshall made a "careful and conscious choice not to possibly alienate the jury with extensive and harsh cross-examination" of the young child's attempts to describe the sexual acts. The path chosen by Marshall assumed that the efforts by the prosecution and the girl's mother to "coach" the girl would have been obvious to the jury without any further emphasis by Marshall through cross-examination. We cannot determine under these circumstances that Marshall's tactical decision not to object and not to cross-examine the girl fell outside the broad professional discretion of an attorney's strategic decisions.

   f.   Ineffective Assistance Claims on Direct Appeal

¶37 Rogers finally makes two arguments that he received ineffective assistance of counsel on direct appeal. We review claims of ineffective assistance of appellate counsel, like those of trial counsel, according to the *Strickland* standard. *Hagen v. State,* 1999 MT 8, ¶ 10, 293 Mont. 60, 973 P.2d 233.

¶38 Rogers first argues that Marshall should have raised on direct appeal the issue of the admissibility of evidence about Rogers's attempt to unlock his handcuffs. Rogers argues that

13

the evidence constituted irrelevant other bad acts evidence, inadmissible pursuant to Rules 401 to 404(b) of the Montana Rules of Evidence. Marshall twice objected to admission of the videotape of the handcuff key as inadmissible, irrelevant, other bad acts evidence that was unfairly prejudicial. The court admitted the evidence.

¶39 The District Court concluded that Rogers had failed to establish in his post-conviction petition that showing the videotape to the jury had prejudiced his defense. The District Court did not analyze whether Marshall's failure to appeal the issue constituted a deficiency under the first part of the *Strickland* test. We agree with Rogers that the videotape of the handcuff key incident had no relevance to the sexual assault charges and should not have been shown to the jury.

¶40 Marshall explained that she had not raised the evidentiary issue on direct appeal because she believed that even if she convinced the Court that the District Court had abused its discretion, this Court would have deemed the error harmless. Marshall did appeal four separate issues that she believed presented the strongest case for reversal. We agree that under the circumstances of this case the District Court's incorrect admission of evidence regarding the handcuff key incident did not constitute reversible error of Rogers's conviction. Section 46-20-701(1), MCA; *State v. Payne,* 2011 MT 35, ¶¶ 35-37, 359 Mont. 270, 248 P.3d 842. A reasonable probability does not exist that the outcome of Rogers's direct appeal would have been different had Marshall additionally appealed the videotape evidence of the handcuff incident. *Savage,* ¶ 22.

¶41 Second, Rogers argues that Marshall delivered ineffective assistance on appeal

because a conflict of interest existed between her role as appellate counsel and as trial counsel. Rogers argues that Marshall should have raised on direct appeal the arguments regarding vouching, ineffective assistance, and failure to preserve a record. We point out that Rogers hired Marshall to represent him on appeal. We disagree that trial counsel cannot effectively assist a client on appeal. Many trial attorneys represent their clients on appeal, in part, because of their intimate knowledge of the facts and law of the case. We further reject the contention that trial counsel could not, and would not, admit to her alleged prejudicial, deficient performance in the best interests of her client on appeal.

¶42 *Did prosecutorial misconduct violate Rogers's due process rights?*

¶43 Rogers argues that the prosecutor violated his due process rights by vouching for the girls' credibility, influencing the girls' testimony, and by not disclosing information that tended to mitigate his guilt pursuant to § 46-15-322, MCA. We affirm the District Court's conclusion that Rogers could have raised these claims on direct appeal and cannot now raise them in post-conviction relief. Section 46-21-105(2), MCA; *DeShields v. State,* 2006 MT 58, ¶ 15, 331 Mont. 329, 132 P.3d 540.

¶44 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT

15

/S/ BETH BAKER