JUSTICE MORRIS
delivered the Opinion of the Court.
¶ 1 J ared Rosling (Rosling) appeals from an order of the First Judicial District Court, Lewis and Clark County, denying his petition for postconviction relief. We affirm.
¶2 We review the following issues on appeal:
¶3 1. Whether Rosling received ineffective assistance of counsel during his trial.
¶4 2. Whether Rosling received ineffective assistance of counsel during his appeal.
FACTUAL AND PROCEDURAL BACKGROUND
¶5 A jury found Rosling guilty of deliberate homicide, aggravated kidnapping, aggravated burglary, tampering with or fabricating physical evidence, and criminal possession of dangerous drugs on October 18, 2004. Attorney Randi Hood (Hood) represented Rosling throughout his criminal proceedings. The district court sentenced Rosling to life in prison without parole for the homicide conviction. The court imposed concurrent sentences for the other convictions.
¶6 Rosling filed a notice of appeal. The court appointed attorney William Hooks (Hooks) as Rosling’s appellate counsel. Rosling appealed the district court’s denial of his motion to dismiss charges for insufficient evidence. We affirmed Rosling’s convictions and sentences in State v. Rosling, 2008 MT 62, ¶ 1, 342 Mont. 1, 180 P.3d 1102.
*52 ¶7 Rosling petitioned the District Court for postconviction relief. Rosling argued that Hood had rendered ineffective assistance of counsel by failing to pursue testing of a latent palm print and failing to object to portions of the State’s closing argument. Rosling argued that Hooks had rendered ineffective assistance of counsel on appeal by failing to raise the district court’s denial of Rosling’s motion for a mistrial and Rosling’s alleged absence from a stage of proceedings. The District Court denied Rosling’s petition following an evidentiary hearing in an order issued on August 23, 2011. Rosling appeals.
¶8 We outlined the general facts regarding Rosling’s conviction in his direct appeal. Rosling, ¶¶ 3-30. The following facts pertain to Rosling’s petition for postconviction relief.
Palm Print and Rosling’s Access to Evidence
¶9 Police officers took a latent palm print from a bathroom mirror at the victim’s apartment while investigating the murder. The officers sent the latent palm print to the Montana Division of Forensic Science Crime Laboratory for testing. A forensic scientist at the lab, Debra Hewitt (Hewitt), investigated the palm print. Hewitt did not receive Rosling’s palm print for testing, and so could not compare the two. Hewitt ruled out the possibility of the palm print belonging to the victim. Rosling had insisted that Hood test the palm print to establish the source. Hewitt determined that the palm print did not belong to Rosling three months after Rosling’s conviction.
¶10 Hood testified at the PCR hearing that she could not recall whether the State had tried to take Rosling’s palm prints for testing. Rosling informed Hood before his trial that he had not entered the victim’s bathroom on the day of the murder. Hood testified that she discussed the evidence with Rosling and that he knew her trial strategy. Hood hesitated to pursue the testing of the palm print in light of her concern that the testing could link Rosling to the print and the murder. Hood acknowledged, however, that conclusive evidence that the palm print did not belong to Rosling would have been favorable to his defense.
¶11 Rosling further testified that he believed Hood withheld information from him while he was in jail before trial. Rosling claimed that he had requested various documents and videos related to his trial and that Hood failed to provide them. Hood testified that she had expressed concerns to Rosling about “snitches” in jail, and did not allow Rosling to have evidence in his possession while in jail. Hood visited Rosling often while he was in jail. Rosling spoke with another inmate about his case after he was transferred to the jail’s general *53 population. Hood disapproved of Rosling’s discussions with potential “snitches.”
Lack of Objections to Prosecution’s Misstatements
¶12 The State argued in closing that Rosling admitted to having been “red-handed.” This argument misstated Rosling’s testimony. The State asked Rosling on cross-examination, “So you were red-handed with blood when you stuck your hand into that brand new ski glove?” Rosling answered, “No, I did not have a red hand.” Hood testified that the prosecutor had veered close to, or actually had committed, misconduct by misstating the facts in closing. Hood admitted that she probably should have objected to the “red-handed” remark, but that she did not want to object too much during a closing argument.
¶13 A neighbor of the victim, Rosaline Diehl (Diehl), testified during Rosling’s trial that she saw a car and person matching Rosling’s description on the morning of the murder. The State argued in its closing that Diehl would gain nothing by lying to the jury. Hood did not object. Hood testified at the PCR hearing that the State’s insinuations about Diehl’s credibility amounted to prosecutorial misconduct. Hood testified that she did not object, however, based on her strategy to have part of Diehl’s testimony-relating to the description of what she saw early the morning of the murder-believed by the jury.
¶14 The State further argued in closing that a beard hair found at the crime scene matched Rosling’s mitochondrial DNA. This argument failed to track the testimony of the State’s DNA expert, Thomas Fedor (Fedor). Fedor testified that the hair’s DNA and Rosling’s DNA “are the same in every location except one.” Fedor testified that he could not state unequivocally that the hair belonged to Rosling. Hood did not object to the prosecution’s statement regarding the DNA. Hood testified at the PCR hearing that the prosecution made the DNA misstatement in its rebuttal closing argument, and that accordingly, she could not counter the DNA statement. Hood also testified that she worried about “the risk of how [another objection] is seen by the jury.”
Inadmissible Photos
¶ 15 Police photographed Rosling after his arrest. These photos showed Rosling’s distinctive “SS” and Swastika tattoos. Hood filed a motion in limine to exclude the photos due to their inflammatory and prejudicial nature. The district court granted the motion to exclude the photos. ¶16 The State used PowerPoint to show numerous photos to the jury throughout the trial. During the State’s examination of Detective Bryan Fischer, the State published photos to the jury that showed *54 Rosling’s tattoos. Hood objected immediately and the District Court admonished the State. The State again in its direct examination published similarly objectionable photos to the jury.
¶17 Hood moved for a mistrial based on the publication of the photos to the jury. The State maintained that it inadvertently had published the photos for only a “few seconds.” The court denied Hood’s motion and determined that the publication was “inadvertent, it was quick, and [the photos] were small in nature.” Hood rejected the court’s offer to give a curative instruction.
¶18 Hooks testified that he had been aware that the court had denied Rosling’s motion for a mistrial and that the jury saw the photos twice. Hooks testified that he did not pursue the issue on appeal due to the fact that he believed Rosling had other, more compelling issues related to the soundness of his conviction. Rosling testified that he did not recall Hooks discussing the mistrial issue with him.
Rosling’s Absence
¶19 Rosling also testified that he had not been present for an in-chambers meeting. This meeting involved the defense’s intent to call a police officer to impeach Diehl’s original statement about what Diehl had seen on the morning of the murder. The trial record does not reflect whether Rosling was present at this in-chambers meeting, or whether he waived his right to be present. Hood did not recall whether Rosling was present. Hooks does not remember discussing the issue with Rosling. Hooks additionally testified that the record was insufficient to pursue on appeal.
STANDARD OF REVIEW
¶20 We review for clear error a district court’s findings of fact in postconviction relief proceedings. Rogers v. State, 2011 MT 105, ¶ 12, 360 Mont. 334, 253 P.3d 889. We review for correctness a district court’s conclusions of law in postconviction relief proceedings. Rogers, ¶ 12. We review de novo a claim of ineffective assistance of counsel. Hamilton v. State, 2010 MT 25, ¶ 7, 355 Mont. 133, 226 P.3d 588.
DISCUSSION
¶21 Whether Rosling received ineffective assistance of counsel during his trial.
¶22 Rosling alleges that Hood provided ineffective assistance of counsel at several stages in his trial. Rosling cites Hood’s failure to investigate, test, and present the palm print and Hood’s failure to object to statements made by the State during closing arguments.
*55 ¶23 We apply the two-part test established in Strickland v. Washington, 466 U.S. 668 (1984), to determine whether counsel rendered ineffective assistance. Rogers, f 15. A defendant must show that counsel’s representation was deficient, and that counsel’s deficient representation prejudiced the defense. Rogers, ¶ 15. A petitioner for post-conviction relief must prove by a preponderance of evidence that he is entitled to relief. Rogers, ¶ 15.
¶24 The fact that a counsel’s challenged conduct may be characterized as “strategic” or “tactical” does not excuse ineffective assistance on the part of counsel. Whitlow v. State, 2008 MT 140, ¶ 18, 343 Mont. 90, 183 P.3d 861. We analyze instead whether counsel’s conduct, regardless of its characterization as “strategic” or “tactical,” proved reasonable under the circumstances. Thus, a defendant “must show that a counsel’s representation fell below an objective standard of reasonableness” in order to establish deficient performance. Strickland, 466 U.S. at 688.
a. Exculpatory Evidence
¶25 Rosling argues that Hood failed to meet the “overarching duty of a criminal defense counsel.” State v. Henderson, 2004 MT 173, ¶ 7, 322 Mont. 69, 93 P.3d 1231. This duty consists of advocating on behalf of the defendant, and meeting, testing, and refuting the case of the prosecution. Henderson, ¶ 7. Rosling argues that the palm print constituted exculpatory evidence that Hood failed to investigate. Rosling insists that Hood had the duty to investigate, test, and present the palm print.
¶26 The Montana Division of Forensic Science Crime Laboratory did not test the palm print against Rosling’s. Hood testified that she did not pursue further testing of the palm print for strategic reasons. Hood argued to the jury in closing that the State had failed to pin the palm print on Rosling. Hood’s decision not to investigate further the palm print does not meet the first prong of Strickland. Hood decided not to pursue further evidence that may have proven harmful to her client. Hood’s decision to avoid a potentially adverse development for Rosling stands as reasonable under the circumstances. The District Court properly concluded that Hood acted well within the parameters of reasonableness.
b. Failure to Object to Prosecution’s Misstatements
¶27 Rosling argues that Hood rendered ineffective assistance through her failure to object to the State’s comments regarding Rosling being “red-handed.” Rosling contends that the State’s allegation amounted to prosecutorial misconduct, and that Hood’s failure to object deprived *56 Rosling of his right to a fair trial.
¶28 Rosling additionally argues that Hood should have objected to the prosecution’s reference to Diehl’s credibility. Rosling points out that this Court has determined that it is improper for the State to “offer personal opinions regarding the credibility of a witness.” State v. Daniels, 2003 MT 247, ¶ 26, 317 Mont. 331, 77 P.3d 224. Hood testified in the PCR hearing that the defense took the position that Diehl was a credible witness.
¶29 Rosling finally contends that Hood rendered ineffective assistance by failing to object to the State’s misstatement regarding the DNA evidence as matching Rosling’s DNA. The District Court noted the minor nature of the prosecution’s misstatement. Fedor testified that Rosling’s DNA matched the hair in each sequence but one. Fedor explained that Rosling’s DNA could indeed be a perfect match to the hair. Fedor testified that he could confirm that match through further testing. The prosecution’s statement thus did not technically misstate the evidence.
¶30 The District Court determined that Hood’s decisions not to object to the statements regarding the “red-handed” comment, the question regarding Diehl’s testimony, or the DNA understatement were tactical. We agree. The decision to object during an opening or closing argument falls well within the range of permissible professional legal conduct. Dawson v. State, 2000 MT 219, ¶ 105, 301 Mont. 135, 10 P.3d 49. Hood testified that she based her decisions not to object during the State’s closing argument on the court’s reaction to previous objections during closing argument. Rosling has failed to demonstrate that Hood’s choice not to object fell below the level of objective reasonableness that could equate to ineffective assistance. Whitlow, ¶ 20.
¶31 Whether Rosling received ineffective assistance of counsel during his appeal.
¶32 We review claims of ineffective assistance of counsel on direct appeal according to the Strickland standard. Hagen v. State, 1999 MT 8, ¶ 10, 293 Mont. 60, 973 P.2d 233. Appellate counsel has no obligation, however, to raise every possible non-frivolous issue on appeal. DuBray v. State, 2008 MT 121, ¶ 31, 342 Mont. 520, 182 P.3d 753.
a. Motion for Mistrial
¶33 Rosling argues that Hooks’s failure to appeal the district court’s ruling on a mistrial motion constituted ineffective assistance of counsel. Hooks admitted that the photo of Rosling represented a *57 legitimate legal basis upon which to appeal. The district court overruled Hood’s objection to the State’s display of the photo, but offered to give a curative instruction. Rosling’s counsel declined the offer. Hooks explained his decision not to raise the issue on appeal, in part, due to the fact that no copy of the photo exists in the district record. The District Court determined that Hooks made a reasonable decision not to pursue the issue on appeal. We agree.
¶34 Hooks raised on direct appeal the issues of the sufficiency of evidence in a circumstantial case and Rosling’s ineligibility for parole. Hooks reasonably selected two issues that could have changed Rosling’s conviction and sentence. Hooks testified that he narrowed a myriad of issues down to ones he thought were “meritorious issues that merit careful consideration.” Hooks acted well within the bounds of reasonableness in his decision not to raise the issue of the court’s denial of a mistrial on appeal. Dubray, ¶ 31.
b. Rosling’s alleged absence
¶35 Rosling additionally argues that Hooks’s failure to appeal Rosling’s absence from a critical proceeding constituted ineffective assistance. This Court has emphasized repeatedly that Article II, Section 24 of the Montana Constitution expressly guarantees a criminal defendant the right to be present at all stages of his trial. State v. Price, 2009 MT 129, ¶ 22, 350 Mont. 272, 207 P.3d 298.
¶36 Hooks explained that he could not establish conclusively on appeal that Rosling had been absent from the meeting in the judge’s chambers. The record reflects only who spoke in the in-chamber discussions. Rosling did not speak as he was represented by counsel. The record does not establish who was present.
¶37 Hood testified at the PCR hearing that she could not recall whether Rosling was present. Hood testified, however, that it was her routine and practice to ensure that her clients were present for in-chambers meetings. We agree that the record does not establish whether Rosling was present at the in-chambers meeting. Hooks could not have rendered ineffective assistance of counsel by not pursuing a claim of a Sixth Amendment violation on appeal under these circumstances.
¶38 Affirmed.
CHIEF JUSTICE McGRATH, JUSTICES COTTER, NELSON and RICE concur.