DA 12-0167

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 161

ROBERT L. ROSE,

        Petitioner and Appellant,

  v.

STATE OF MONTANA,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                 In and For the County of Ravalli, Cause No. DV 10-538
                 Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Robert L. Rose, self-represented; Deer Lodge, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General; Tammy K. Plubell, Assistant
                Attorney General; Helena, Montana

                        Submitted on Briefs:  March 6, 2013
                                Decided:  June 18, 2013

Filed:

               _____
                         Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     This is Robert Rose's (Rose) third appeal before this Court. We previously affirmed Rose's conviction of aggravated kidnapping, assault with a weapon, and assault on a peace officer. *State v. Rose*, 2009 MT 4, 348 Mont. 291, 202 P.3d 749 (*Rose I*). We have also affirmed a grant of summary judgment for the State following Rose's petition for a declaration that the actions of the Montana Department of Corrections violated state open meeting and public participation laws. *Rose v. State*, 2012 MT 55N, 364 Mont. 552. Rose now appeals the denial of his Petition for Postconviction Relief by the Twenty-First Judicial District Court, Ravalli County. We affirm.

## ISSUES

¶2     We restate the issues on appeal as follows:

¶3     *1. Did the District Court err by denying Rose's postconviction relief claim alleging that his trial counsel provided ineffective representation during plea negotiations?*

¶4     *2. Did the District Court err by denying Rose's postconviction relief claim alleging that he was denied access to counsel during a critical stage of trial?*

¶5     *3. Did the District Court err by denying Rose's postconviction relief claim alleging that his appellate counsel provided ineffective representation by failing to raise certain issues on appeal?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 Rose was charged with aggravated kidnapping, assault with a weapon, and assault on a peace officer on January 23, 2002. A jury found Rose guilty of all three charges on June 6, 2003 after a four-day trial. Rose's direct appeal of his convictions alleged a violation of his right to a speedy trial, claimed ineffective assistance of trial counsel, and challenged the District Court's denials of his request for a hearing to address complaints about his counsel and his motion for a new trial. We rejected these claims in *Rose I* and upheld Rose's convictions. Rose then filed a petition for rehearing, which we denied on March 11, 2009. Rose next petitioned the United States Supreme Court for a writ of certiorari, which was denied on October 5, 2009. *Rose v. Montana*, 558 U.S. 911, 130 S. Ct. 289 (2009). Rose thereafter filed a petition for postconviction relief (the petition) in Ravalli County District Court on September 30, 2010. The State filed a response, as ordered by the District Court, on February 18, 2011.

¶7 Rose's petition and accompanying memorandum alleged a multitude of ineffective assistance of counsel claims regarding Rose's appointed trial and appellate counsel. The District Court dismissed all of Rose's contentions in a 91-page order on January 18, 2012, and this appeal followed. However, Rose has not maintained every claim in his petition on appeal. Instead, Rose's appeal advances only three alleged instances of ineffective assistance of counsel. These issues concern the conduct of Rose's last appointed trial counsel, Kelli Sather (Sather), during plea negotiations, an allegedly unconstitutional restriction of Rose's access to counsel during an overnight recess, and whether Rose's appointed appellate counsel provided ineffective assistance by declining to raise certain

3

issues on appeal. Rose's procedural "odyssey" both below and before this Court is long and convoluted, and the period between Rose's arrest and the trial is summarized in *Rose I. See Rose*, ¶¶ 8-35. Recognizing this, we will only outline the facts relevant to the issues Rose maintains on appeal.

¶8 *A. Facts Pertaining to Sather's Representation of Rose During Plea Negotiations.*

¶9 Rose's first appealed issue concerns what he alleges was Sather's improper handling of a plea agreement offer. Sather was appointed to represent Rose on July 22, 2002 after Dustin Gahagan, Rose's second court-appointed attorney, filed a Motion for Substitution of counsel in anticipation of the end of his conflict public defender contract.[1] Ravalli County Attorney George Corn (Corn) sent Sather a letter on May 21, 2003 detailing a proposed plea agreement. Corn offered to dismiss the aggravated kidnapping charge and the felony assault on a police officer charge if Rose pled "open" to assault with a weapon and misdemeanor assault. The plea agreement proposed that the assault with a weapon and misdemeanor assault charges would run consecutively. Corn also stated he "would agree to cap the Persistent Felony Offender at 10 years with 5 suspended," and that "[t]his would run consecutive to the Assault with a Weapon." Corn further stated that in the "best case," Rose faced 1 ¼ years before parole eligibility, and, in the "worst case," 6 ¼ years. The letter concluded by stating "[p]lease feel free to give this letter to your client," and advised that the offer would expire at 4:30 p.m. on May 23, 2003.

---

[1] Gahagan himself had been appointed after Larry Mansch, Rose's initial court-appointed counsel, had volunteered to step aside in light of Rose's complaints regarding his representation.

4

¶10     Rose attached an affidavit from Sather to his petition detailing the plea negotiations surrounding Corn's May 21 offer. In it, Sather claims that Rose had expressed interest in entering into a plea agreement prior to her receipt of Corn's offer. Sather further claims that she researched the Persistent Felony Offender statutes and case law after receiving Corn's offer. As a result of this research, Sather apparently came to believe that "Mr. Corn was recommending a sentencing that was not in conformity with the law." In particular, Sather believed that Corn was improperly characterizing the Persistent Felony Offender (PFO) designation as a separate sentence in addition to the sentence for the underlying offense, and not as a sentencing enhancement meant to replace the offense's maximum sentence. Sather claims that she and Kathy Anderson, her co-counsel, met with Corn and a Detective Chinn on May 22, 2003 to discuss the proposed plea agreement. Her affidavit does not indicate that she discussed the offer with Rose prior to this meeting, and Rose claims that she did not. Sather's affidavit states that she presented her research on the nature of the PFO sentence to Corn and "informed him that we could not possibly enter into the type of agreement he had offered." She then claims to have made a counter-offer in light of what she believed was an illegal plea agreement offer. Corn apparently responded angrily to Sather's discussion of the proper treatment of the PFO sentence and withdrew the offer. Thus, according to Sather's affidavit, Corn withdrew the proposed plea agreement after Sather objected to what she thought was an illegal sentence and made a counter-offer. This apparently occurred without Rose's involvement and without Sather presenting Rose with the offer.

¶11     *B. Facts Pertaining to Rose's Access to Counsel During Trial.*

5

¶12    Rose's second issue on appeal concerns what he claims was an unconstitutional denial of access to counsel during an overnight recess after the first day of trial. Trial ended the first day around 5:30 p.m., and Sather arrived at the jail around 9:00 p.m. that night to discuss the day's happenings and to go over potential defense strategies with Rose. According to another Sather affidavit attached to the petition, jail staff informed Sather that she had to leave around 10:00 p.m. Sather ultimately left the jail around 10:20 p.m. under the direction of the jail staff. Sather has claimed that when she was removed from her meeting with Rose, a considerable amount of information remained to be discussed. She further claimed that she would have stayed and continued to meet with Rose for several hours if the jail staff had not required her to leave.

¶13    *C. Facts Pertaining to Rose's Representation on Direct Appeal.*

¶14    Rose finally claims, at least with regards to the scope of this appeal, that his appointed appellate counsel provided ineffective representation by not raising his restricted access to Sather during the overnight recess as an issue on direct appeal. Rose's court-appointed appellate counsel chose to raise four issues on direct appeal. As noted, Rose's appellate counsel argued ineffective assistance of trial counsel, violation of Rose's right to a speedy trial, that Rose was improperly denied a hearing on the effectiveness of his counsel, and that the prosecutor made improper comments during the closing argument. *Rose*, ¶¶ 3-6.

## STANDARD OF REVIEW

¶15    We review a district court's denial of a petition for postconviction relief to determine whether its findings of fact are clearly erroneous and whether its legal conclusions are

6

correct. *Rukes v. State*, 2013 MT 56, ¶ 8, 369 Mont. 215, 297 P.3d 1195. Ineffective

assistance of counsel (IAC) claims present mixed questions of law and fact that we review de

novo. *Miller v. State*, 2012 MT 131, ¶ 9, 365 Mont. 264, 280 P.3d 272. To prevail on an

IAC claim, a petitioner must show that counsel's performance was deficient and that the

deficient performance prejudiced the defense. *Rukes*, ¶ 9 (citing *Strickland v. Washington*,

466 U.S. 668, 687, 104 S. Ct. 2052 (1984)). This standard also applies to IAC claims

involving appellate counsel. *Rogers v. State*, 2011 MT 105, ¶ 37, 360 Mont. 334, 253 P.3d

889.

## DISCUSSION

¶16    *1. Did the District Court err by denying Rose's postconviction relief claim alleging that his trial counsel provided ineffective representation during plea negotiations?*

¶17    *A. Rose's IAC claim is not record based and was properly brought in a Petition for Post-Conviction Relief*

¶18    Ineffective assistance of counsel claims are appropriate for review in a petition for

postconviction relief when it is not apparent on the face of the record why counsel took a

particular course of action. *State v. Baker*, 2013 MT 113, ¶ 42, 370 Mont. 43. When the

record sufficiently answers "why" counsel did or did not take a certain course of action, the

IAC claim must be brought on direct appeal. *State v. Kime*, 2013 MT 14, ¶ 31, 368 Mont.

261, 295 P.3d 580; § 46-21-105(2), MCA, ("When a petitioner has been afforded the

opportunity for a direct appeal of petitioner's conviction, grounds for relief that were or

could reasonably have been raised on direct appeal may not be raised, considered, or decided

in a proceeding brought under this chapter."). A record which is silent about the reasons for

7

counsel's actions seldom provides sufficient evidence to rebut the strong presumption that counsel's actions fell within the wide range of reasonable professional assistance. *State v. Heavygun*, 2011 MT 111, ¶ 22, 360 Mont. 413, 253 P.3d 897.

¶19    Rose claims that he was denied the right to effective assistance of counsel because Sather did not inform him of a plea offer that he claims he would have accepted and therefore would have received a lower sentence. The record on direct appeal did not reveal *why* Sather did not communicate the offer to Rose, if Rose knew of the offer, the substance of the offer, or the circumstances of the alleged rejection. As noted, this Court may review a claim of IAC on direct appeal "only when the record 'fully explains why counsel took, or failed to take, action in providing a defense for the accused.'" *Longjaw v. State*, 2012 MT 243, ¶ 19, 366 Mont. 472, 288 P.3d 210 (quoting *State v. Deschon*, 2004 MT 32, ¶ 32, 320 Mont. 1, 85 P.3d 756). In *Longjaw,* the defendant claimed that his counsel's failure to obtain an independent medical expert constituted IAC on direct appeal. *Longjaw,* ¶ 21. The record on direct appeal revealed that one of Longjaw's four counsel explained why he believed that a medical expert was not necessary at a hearing. There was no other statement in the record by any of Longjaw's counsel explaining why they didn't obtain a medical expert. We determined that this record was insufficient for review of the defendant's IAC claim on direct appeal because it "[did] not fully explain 'why' an independent medical examination or expert was not ultimately obtained by Longjaw's counsel[.]" *Longjaw,* ¶ 22. Unlike *Longjaw,* here there was *no* explanation in the record as to why Rose's counsel rejected the plea offer, how the offer was rejected, or the circumstances of the offer itself. Without any

8

indication why or how Sather rejected the offer, let alone an incomplete explanation like in *Longjaw*, we cannot say that Rose's IAC claim is procedurally barred because it was reasonably available on direct appeal. Rose's IAC claim concerning the plea offer was appropriately included in his petition for postconviction relief.

¶20 *B. Rose's Claim Fails Under the Second Prong of Strickland.*

¶21 Criminal defendants enjoy a fundamental right to effective assistance of counsel. U.S. Const. amend. VI; Mont. Const. art. II, § 24; *State v. Holm*, 2013 MT 58, ¶ 18, 369 Mont. 227. The Sixth Amendment to the United States Constitution entitles indigent defendants to representation by appointed counsel paid for by the public. *Gideon v. Wainwright*, 372 U.S. 335, 342-45, 83 S. Ct. 792 (1963); *State v. Dethman*, 2010 MT 268, ¶ 15, 358 Mont. 384, 245 P.3d 30. Without effective counsel during plea negotiations, criminal defendants would be denied effective representation at what has increasingly become the most critical point of the criminal justice process for a defendant. *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399, 1407 (2012); *Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376, 1387 (2012) ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it.").

¶22 Recognizing these requirements, we determine whether counsel rendered ineffective assistance in the plea negotiation context by applying the two-part test established in *Strickland. See Missouri*, 132 S. Ct. at 1405; *Hagen v. State*, 1999 MT 8, ¶ 10, 293 Mont. 60, 973 P.2d 233 ("In considering ineffective assistance of counsel claims on the merits on direct appeal and in postconviction proceedings, Montana courts apply the two-pronged test

9

set forth by the United States Supreme Court in *Strickland v. Washington*[.]"). To prevail on a claim of ineffective assistance of counsel, the defendant must prove both *Strickland* prongs: (1) that counsel's representation fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the defense. *State v. Bekemans*, 2013 MT 11, ¶¶ 29-30, 368 Mont. 235, 293 P.3d 843. Because a defendant must prove both prongs of *Strickland*, if Rose fails to prove either prong we need not consider the other. *Whitlow v. State*, 2008 MT 140, ¶ 11, 343 Mont. 90, 183 P.3d 861.

¶23 However, we need not address whether Sather's actions were deficient or whether they prejudiced Rose's defense pursuant to *Strickland* because it is now clear that, in Montana, a sentence that imposes a separate sentence for both the PFO status and the underlying sentence is illegal. *Gunderson*, ¶¶ 49, 54. Rose should not be allowed to advance a plea agreement as a basis for his IAC claim where subsequent case law renders the terms of that agreement illegal. As explained in *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838 (1993), a legal rule that has been reversed cannot form the basis of a present IAC claim. There, the U.S. Supreme Court held that defense counsel's failure to make an objection in a criminal sentencing proceeding—"an objection that would have been supported by a decision which subsequently was overruled"—did not constitute prejudice within the meaning of *Strickland*. Fretwell was sentenced to death by the jury that had convicted him of capital felony murder under Arkansas law. He later claimed his counsel was ineffective for failing to invoke the Eighth Circuit's opinion in *Collins v. Lockhart*, 754 F.2d 258 (8th Cir. 1985), which held that a death sentence is unconstitutional if it is based on an

10

aggravating factor that duplicates an element of the underlying felony. Four years after Fretwell was sentenced, the Eighth Circuit overruled *Collins*. In Fretwell's habeas claim, the Eighth Circuit held that his death sentence would not stand, reasoning that since Fretwell "was entitled to the benefit of *Collins* at the time of his original sentencing proceeding, it would only 'perpetuate the prejudice caused by the original sixth amendment violation' to resentence him under current law." *Fretwell*, 506 U.S. at 368. The U.S. Supreme Court reversed.

¶24 The Court observed that "the touchstone of an ineffective-assistance claim is the fairness of the adversary proceeding, and 'in judging prejudice and the likelihood of a different outcome, "'[a] defendant has no entitlement to the luck of a lawless decisionmaker.'"'" *Fretwell*, 506 U.S. at 370 (quoting *Nix v. Whiteside*, 475 U.S. 157, 175, 106 S. Ct. 988 (1986) and *Strickland*, 466 U.S. at 695). The Court held that, although the "deficiency" prong of *Strickland* is determined by the law in effect at the time of a defendant's trial, the law at the time the ineffective assistance claim is made applied to the "prejudice" component. *Fretwell*, 506 U.S. at 372. Concurring, Justice O'Connor also quoted *Strickland*'s reference that "a defendant has no entitlement to the luck of a lawless decisionmaker, *even if a lawless decision cannot be reviewed*." *Fretwell*, 506 U.S. at 374 (O'Connor, J., concurring) (emphasis added) (quoting *Strickland*, 466 U.S. at 695). Thus, Justice O'Connor explained, "the court making the prejudice determination may not consider the effect of an objection it knows to be wholly meritless under current governing law, even

11

if the objection might have been considered meritorious at the time of its omission." *Fretwell*, 506 U.S. at 374.

¶25 The situation considered in *Fretwell* is not identical to the present case of alleged IAC surrounding the failure to communicate a plea agreement. *See Lafler*, 132 S. Ct. at 1387 ("Here, however, the injured client seeks relief from counsel's failure to meet a valid legal standard, not from counsel's refusal to violate it."). However, *Fretwell* is "instructive" because it demonstrates "there are also situations in which it would be unjust to characterize the likelihood of a different outcome as legitimate 'prejudice' . . . because defendants would receive a windfall as a result of the application of an incorrect legal principle or a defense strategy outside the law." *Lafler*, 132 S. Ct. at 1387. Even if Judge Langton might have accepted the plea agreement Corn offered, and even if the law was unsettled at the time as to whether a PFO sentence could be imposed in addition to the sentence for the underlying offense, by the time Rose asserted his IAC claim the law was clear that the plea agreement as proposed offered a sentence that was illegal. *Gunderson*, ¶ 54. Rose cannot demonstrate prejudice "based on considerations that, as a matter of law, ought not to inform the inquiry." *Lafler*, 132 S. Ct. at 1387 (quoting *Fretwell*, 506 U.S. at 373 (O'Connor, J., concurring)). This is because the remedy for IAC arising out of a rejected plea is "to order the State to reoffer the plea agreement," *Lafler*, 132 S. Ct. at 1391, and current law does not entitle Rose to the plea agreement Corn offered him in 2003. Rose, like Fretwell, cannot show prejudice by now asserting an incorrect or overruled legal principle as the basis for his claim of ineffective assistance of counsel. *See also*, *Perez v. Rosario*, 459 F.3d 943, 948 (9th Cir.

2006); *Grigsby v. Blodgett*, 130 F.3d 365, 372 (9th Cir. 1997) (a defendant "cannot establish prejudice based on counsel's failure to make a motion based on this supplanted opinion."). We accordingly affirm the District Court's denial of Rose's petition for postconviction relief.

¶26   *2. Did the District Court err by denying Rose's postconviction relief claim alleging that his appellate counsel provided ineffective representation by failing to raise certain issues on appeal?*

¶27   Rose next argues that his appellate counsel provided ineffective assistance by failing to raise certain issues on appeal.  Rose specifically claims that when the jail staff forced Sather to cut her meeting with Rose short during the overnight recess, they violated his right to access to counsel.  Rose asserts that this claim was clearly his strongest on appeal, and that his appellate counsel accordingly rendered deficient representation by failing to advance it. The State responds that Rose was not denied access to counsel and that appellate counsel reasonably selected the issues that had the greatest likelihood of success on appeal.

¶28   Like Rose's claims regarding his trial counsel, we review claims of ineffective assistance of appellate counsel according to the *Strickland* standard.  *Rosling v. State*, 2012 MT 179, ¶ 32, 366 Mont. 50, 285 P.3d 486.  It is well established, as the State notes, that appellate counsel need not raise every colorable issue on appeal.  *Rosling*, ¶ 32; *DuBray v. State*, 2008 MT 121, ¶ 31, 342 Mont. 520, 182 P.3d 753; *In re Martin*, 240 Mont. 419, 422, 787 P.2d 746 (1989).  Our presumption of effective assistance of appellate counsel will be overcome only when ignored issues are clearly stronger than those presented.  *DuBray*, ¶ 31.

¶29   Here, Rose cannot show that the alleged violation of his right to access counsel during the overnight recess was clearly stronger than the issues his appellate counsel presented on

13

appeal. On appeal, Rose argues that because he was denied access to counsel according to the U.S. Supreme Court's decisions in *Geders v. United States*, 425 U.S. 80 (1975), and *United State v. Cronic*, 466 U.S. 648 (1984), this claim was clearly stronger than those presented by appellate counsel. As noted, Rose's appellate counsel presented issues concerning ineffective assistance of trial counsel, violation of Rose's right to a speedy trial, the denial of a hearing on the effectiveness of his counsel, and allegedly improper comments made during the State's closing argument. *Rose I*, ¶¶ 3-6.

¶30     However, neither *Cronic* nor *Geders* are applicable to Rose's alleged denial of access to counsel during the overnight recess. In *Geders*, one co-defendant testified in his own defense during two consecutive days of trial. At the end of the first day of the defendant's testimony, the prosecutor asked the judge to instruct the defendant not to discuss the case overnight with anyone. *Geders*, 425 U.S. at 82. The defendant's counsel objected, stating that he believed he had a right to confer with his client about matters other than the coming cross-examination. *Geders*, 425 U.S. at 82. The judge expressed doubt about the defendant's ability to so confine his discussion with counsel and issued the order. *Geders*, 425 U.S. at 82-83. The Supreme Court reasoned that the order barring counsel and defendant from conferring during a 17-hour overnight recess restricted their ability to discuss the events of the day's trial or to go over tactical decisions and strategies. *Geders*, 425 U.S. at 86. Because the court prevented the defendant from discussing *anything* with his counsel during a 17-hour recess, the Court found that the order "impinged upon his [the defendant's]

14

right to the assistance of counsel guaranteed by the Sixth Amendment." *Geders*, 425 U.S. at 91.

¶31 Unlike *Geders*, Rose was neither denied access to counsel during the entire overnight recess nor prohibited from discussing any topic with his counsel. It is undisputed that Rose's counsel *could* have visited him in the jail following the end of trial around 5:30 p.m. Rose's counsel *chose* to not visit the jail until roughly 9:30 p.m., and the jail staff asked her to leave roughly an hour later. Rose's counsel had the opportunity to confer with Rose about anything for over five hours after trial, and she met with Rose again the next morning before trial began. The absolute 17-hour bar on communication held to violate the Sixth Amendment in *Geders* is clearly distinct from Rose's situation.

¶32 *Cronic* is similarly inapplicable. There, the Supreme Court considered a decision by the 10th Circuit Court of Appeals declaring that inadequacy of representation may be inferred without proof of specific prejudice "when circumstances hamper a given lawyer's preparation of a defendant's case." *Cronic*, 466 U.S. at 650. While assessing the propriety of the appellate court's inferential approach to Sixth Amendment violations, the Supreme Court recognized that "the complete denial of counsel" or the denial of counsel during a critical stage of trial allows a presumption that there has been a denial of Sixth Amendment rights. *Cronic*, 466 U.S. at 659. Neither situation is present in Rose's case, however. Rose's counsel was not totally absent and Rose was not denied access to counsel during the overnight recess, as discussed above. Rose therefore cannot demonstrate that his access to counsel during the overnight recess was so circumscribed that we can simply presume

15

prejudice. *See Wright v. Van Patten*, 552 U.S. 120, 124-25, 128 S. Ct. 743 (2008) (noting that a Sixth Amendment violation may be presumed when "circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."). The analysis in *Cronic* provides an alternative to *Strickland* in extremely limited situations. *State v. Peart*, 2012 MT 274, ¶ 24, 367 Mont. 153, 290 P.3d 706. To qualify under *Cronic*, "counsel's failure must be complete." *Riggs v. State*, 2011 MT 239, ¶ 13, 362 Mont. 140, 264 P.3d 693 (citing *Bell v. Cone*, 535 U.S. 685, 696-97, 122 S. Ct. 1843 (2002)). Sather's removal from the jail at the close of visiting hours is not the complete failure of the adversarial process that the *Cronic* presumption requires. Because neither *Cronic* nor *Geders* support a finding that Rose was unconstitutionally denied access to counsel, Rose cannot show that this issue is clearly stronger than the issues Rose's appellate counsel presented on appeal. We accordingly conclude that Rose's appellate counsel did not render ineffective assistance by failing to present the access to counsel issue on appeal.

¶33    *3. Did the District Court err by denying Rose's postconviction relief claim alleging that he was denied access to counsel during a critical stage of trial?*

¶34    Rose finally argues that he was denied access to counsel in violation of the Sixth and Fourteenth Amendments when jail staff requested that Sather leave the jail around 10:30 p.m. during an overnight recess. As noted in our discussion of Issue Two above, Rose claims that the U.S. Supreme Court's decisions in *Geders* and *Cronic* require finding that he was unconstitutionally denied access to counsel. The State responds that because this issue

16

could have been raised on direct appeal, it is now barred from being considered in a petition for postconviction relief pursuant to § 46-21-105(2), MCA.

¶35    Postconviction relief is a means to provide review of collateral claims that could not have been raised on appeal. Section 46-21-105, MCA. Section 46-21-105(2), MCA, provides that "[w]hen a petitioner has been afforded the opportunity for a direct appeal of the petitioner's conviction, grounds for relief that were or could reasonably have been raised on direct appeal may not be raised, considered, or decided in a proceeding brought under [the postconviction] chapter." Rose's claim regarding his access to counsel during the overnight recess could have been raised on direct appeal. Because we will not consider grounds for postconviction relief that reasonably could have been raised on direct appeal, we will not consider Rose's claim that he was denied access to counsel.

## CONCLUSION

¶36    Both Rose's trial and appellate counsel provided effective assistance, and we will not consider Rose's access to counsel claim that could have been raised on direct appeal.

¶37    Affirmed.

/S/ MICHAEL E WHEAT

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

17

/S/ LAURIE McKINNON