DA 06-0460

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 121

DONALD DuBRAY,

       Petitioner and Appellant,

  v.

STATE OF MONTANA,

       Respondent and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDV-04-1422
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Jeremy S. Yellin, Attorney at Law, Havre, Montana

       For Appellee:

       Hon. Mike McGrath, Montana Attorney General; Tammy K.
Plubell, Assistant Attorney General, Helena, Montana

       Brant Light, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  September 26, 2007

Decided:  April 15, 2008

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Donald DuBray petitioned the Eighth Judicial District Court, Cascade County, for postconviction relief from the judgment entered against him following his convictions of deliberate homicide, robbery and felony theft. The District Court denied DuBray's petition. DuBray appeals, and we affirm.

¶2 The issues are:

¶3 1. Did the District Court properly deny DuBray's claim that his trial counsel were ineffective because they introduced prejudicial matter into the trial?

¶4 2. Did the District Court properly deny DuBray's claim that his trial counsel were ineffective because one of his attorneys had a conflict of interest?

¶5 3. Did the District Court properly deny DuBray's claim that his trial counsel were ineffective because they did not assure DuBray's presence at all critical stages of his trial?

¶6 4. Did the District Court properly deny DuBray's claim that his counsel on direct appeal was ineffective because he failed to raise the issues concerning attorney conflict of interest and DuBray's absence at critical stages of trial?

¶7 5. Did the District Court properly deny DuBray's claim that he is entitled to a new trial based upon newly discovered evidence?

## BACKGROUND

¶8 In 1999, a jury found DuBray guilty of robbery, felony theft and the deliberate homicide of Suzette Pritchard in a 1986 Great Falls convenience store robbery. Three

attorneys provided DuBray's defense during the month-long trial. After the District Court entered judgment, DuBray appealed. We affirmed. *See State v. DuBray*, 2003 MT 255, 317 Mont. 377, 77 P.3d 247 (*DuBray I*).

¶9 DuBray petitioned for postconviction relief in December of 2004, claiming trial counsel and counsel on direct appeal provided him ineffective assistance. Specifically, DuBray claimed one of his trial counsel had a conflict of interest, his trial team introduced prejudicial comments and references to other crimes and wrongs, and his trial team failed to protect his right to be present at all critical stages of the proceedings and to object to the State of Montana's introduction of highly damaging testimony vouching for the credibility of government witnesses. DuBray also claimed his appellate counsel rendered ineffective assistance by failing to raise, on direct appeal, trial counsels' conflict of interest, introduction of prejudicial evidence, and failure to challenge improper vouching. Finally, DuBray claimed he had new evidence requiring a new trial. The State filed a response to DuBray's petition, with supporting affidavits and other documents.

¶10 The District Court denied most of DuBray's claims based on the briefs and supporting materials filed. The court held a hearing on DuBray's claims that his trial counsel introduced evidence of prior crimes and failed to object or seek other relief regarding vouching for the credibility of government witnesses. The court ultimately denied those claims as well. DuBray appeals.

STANDARDS OF REVIEW

¶11 Our general standard of review of a district court's denial of a petition for

3

postconviction relief is whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *State v. Morgan*, 2003 MT 193, ¶ 7, 316 Mont. 509, ¶ 7, 74 P.3d 1047, ¶ 7 (citations omitted). Counsel's reasonable trial tactics and strategic decisions are entitled to great deference when reviewed on a claim of ineffective assistance of counsel, and we rarely grant relief if evidence supports the strategic nature of trial counsel's decisions. *Hartinger v. State*, 2007 MT 141, ¶ 45, 337 Mont. 432, ¶ 45, 162 P.3d 95, ¶ 45 (citations omitted). The question is whether the tactics and strategy were reasonable under the circumstances—the question is not whether we would have made the same decisions.

¶12 To prevail on a motion for a new trial based on newly-discovered evidence, the defendant must satisfy the five-part test set forth in *State v. Clark*, 2005 MT 330, ¶ 34, 330 Mont. 8, ¶ 34, 125 P.3d 1099, ¶ 34. The same test is applied when a defendant requests a new trial in a postconviction proceeding. *See Crosby v. State*, 2006 MT 155, ¶ 20, 332 Mont. 460, ¶ 20, 139 P.3d 832, ¶ 20. We review a trial court's findings in applying the test for clear error; when a district court has exercised its discretion in applying the third, fourth and fifth elements, we review those decisions for abuse of discretion. *Clark*, ¶ 39.

## ISSUE 1

¶13 **Did the District Court properly deny DuBray's claim that his trial counsel were ineffective because they introduced prejudicial matter into the trial?**

¶14 DuBray contends his trial counsel twice introduced highly prejudicial matter into the trial. The first instance purportedly occurred during the opening statement for the defense by

4

DuBray's counsel Eric Olson. Olson told the jury the evidence presented at trial may cause them to be glad DuBray was going back to prison when trial was over, but it would not convince them DuBray committed the crimes of which he was accused. The District Court did not address this claim in its order denying the petition.

¶15 In an affidavit submitted in response to the petition for postconviction relief, defense counsel Carl Jensen, Jr., stated that, prior to trial, defense counsel were aware the evidence presented at trial would lead to an inference that DuBray already was incarcerated, and that many of the witnesses had personal animosities toward DuBray. Jensen stated counsel were concerned that DuBray "lacked any positive presence with the jury." Jensen's statements indicate that Olson's challenged remarks during the opening statement were made for strategic reasons.

¶16 The second instance in which DuBray contends his counsel introduced prejudicial matter into the trial occurred during cross-examination of State witness Thelma Weatherwax. During that cross-examination, defense counsel Jensen elicited Weatherwax's testimony that she suspected DuBray was guilty of another, unrelated, homicide in the Great Falls area.

¶17 In analyzing this claim, the District Court employed the two-part test for evaluating ineffective assistance of counsel claims outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), and adopted in *Hagen v. State*, 1999 MT 8, ¶ 10, 293 Mont. 60, ¶ 10, 973 P.2d 233, ¶ 10: whether counsel's performance was deficient and, if so, whether the deficient performance was prejudicial. The court determined counsel's reference to the other homicide was a tactical decision which was objectively reasonable and stemmed from

5

informed, professional deliberation.

¶18   Jensen's affidavit in response to the petition for postconviction relief stated the trial theory of the defense was that the State's case was based on what they wanted the evidence to be, and not on any real proof that DuBray had committed the crimes of which he was accused. Jenson stated the defense was aware prosecution witness Weatherwax believed DuBray had murdered Patty Young Running Crane—the victim of the separate, unrelated homicide—but the team also was aware that someone else had been charged with Running Crane's death and DuBray was not a suspect. Jensen averred the defense team discussed bringing up Weatherwax's beliefs regarding Running Crane as a way of discrediting Weatherwax's testimony and reinforcing the idea that the State's case was based on what the State wanted the evidence to be, not on actual proof. At the District Court's hearing on this issue, Olson testified the defense team wanted to elicit this testimony from Weatherwax to refocus the jury on the facts of the case, rather than on beliefs about DuBray's background or other events in which he was rumored to have been involved. Jensen's affidavit and Olson's testimony support the strategic basis for questioning Weatherwax regarding her beliefs concerning the Running Crane homicide.

¶19   Given our high standard of deference to trial tactics and strategic decisions, we hold DuBray has not established that his trial counsels' performance was deficient in relation to either the defense opening statement or the Weatherwax cross-examination. Consequently, because both parts of the *Strickland* test must be met to establish ineffective assistance, we need not address the prejudice part. *See Adams v. State*, 2007 MT 35, ¶ 22, 336 Mont. 63, ¶

22, 153 P.3d 601, ¶ 22 (citations omitted).

¶20     We hold the District Court did not err in denying this claim.

## ISSUE 2

**¶21     Did the District Court err in denying DuBray's claim that his trial counsel were ineffective because one of his attorneys had a conflict of interest?**

¶22     DuBray's trial attorney Jeff Lynch had a prior attorney-client relationship with convenience store owner David Keith, who testified for the State.  In his petition for postconviction relief, DuBray contended this was a conflict of interest which resulted in Lynch's ineffective cross-examination of Keith.  The District Court noted that Lynch's alleged conflict of interest was clearly revealed within the trial record and, therefore, was procedurally barred by § 46-21-105(2), MCA.

¶23     DuBray asserts error in this regard but advances no argument or authority as required by M. R. App. P. 12(1)(f).  We hold DuBray has not established that the District Court erred in denying this claim as procedurally barred.

## ISSUE 3

**¶24     Did the District Court err in denying DuBray's claim that his trial counsel were ineffective because they did not assure DuBray's presence at all critical stages of his trial?**

¶25     In his petition for postconviction relief, DuBray asserted his trial counsel were ineffective because they did not insure that he was present during the court's discussions with the jury foreman during the jury's deliberations.  The District Court determined that this issue is procedurally barred in a postconviction proceeding because it could have been raised

on direct appeal. *See* § 46-21-105(2), MCA.

¶26 DuBray asserts error, but does not advance argument or authority as required by M. R. App. P. 12(1)(f). We hold he has not established that the District Court erred in denying this claim as procedurally barred.

ISSUE 4

¶27 **Did the District Court err in denying DuBray's claim that his counsel on direct appeal was ineffective because he failed to raise the issues concerning attorney conflict of interest and DuBray's absence at critical stages of trial?**

¶28 DuBray asserts that, had his counsel on direct appeal raised the issues set forth under Issues 2 and 3 above, his direct appeal would have resulted in "automatic reversal" of his conviction. As discussed above, the District Court determined DuBray's claims under those issues were procedurally barred from consideration in this postconviction relief proceeding. Nevertheless, the court discussed the merits of both and determined DuBray had not established ineffective assistance of appellate counsel on either.

¶29 DuBray reasserts his substantive arguments regarding his appellate counsel's failure to raise on appeal trial counsel's purported conflict of interest and failure to assure his presence at all critical stages of trial. He also argues that because the District Court considered an affidavit provided by his counsel on direct appeal—which affidavit was outside the trial record—the court should have held a hearing regarding counsel's failure.

¶30 We first address DuBray's claim that the District Court erred in failing to hold a hearing on this issue. Although M. R. App. P. 12(1)(f) requires the appellant to provide citations to the authorities relied on, DuBray has cited no authority requiring a court to hold a

8

hearing whenever it considers written materials filed in support of or in response to a petition for postconviction relief. It is not this Court's function to conduct legal research on the parties' behalf or to develop their legal analysis for them. *State v. Zakovi*, 2005 MT 91, ¶ 28, 326 Mont. 475, ¶ 28, 110 P.3d 469, ¶ 28 (citation omitted). DuBray has failed to establish that the District Court was required to hold a hearing on this issue.

¶31 We now turn to the merits of DuBray's claims of ineffective assistance of appellate counsel. The criteria for establishing ineffective assistance of appellate counsel are the same as those used to establish ineffective assistance of trial counsel: whether counsel's performance fell below an objective standard of reasonableness and, if so, whether there is a reasonable probability that, but for counsel's unprofessional errors, the petitioner would have prevailed on appeal. *Dawson v. State*, 2000 MT 219, ¶ 147, 301 Mont. 135, ¶ 147, 10 P.3d 49, ¶ 147 (citations omitted). We observe that counsel has no constitutional obligation to raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 754, 103 S. Ct. 3308, 3314 (1983). The presumption of effective assistance of counsel will be overcome only when ignored issues are clearly stronger than those presented. *Smith v. Robbins*, 528 U.S. 259, 287-88, 120 S. Ct. 746, 765 (2000) (citation omitted).

¶32 In his affidavit filed in response to DuBray's petition for postconviction relief, appellate counsel stated he considered 38 issues when drafting the appeal, but ultimately chose and briefed only the strongest 13 of those. Counsel stated the contentions DuBray faults him for failing to raise "are not well supported in the record, and would have distracted from the arguments made." We agree.

¶33    To prevail on a conflict of interest claim, a defendant must show that (1) counsel actively represented conflicting interests; and (2) an actual conflict of interest adversely affected counsel's performance. *State v. Deschon*, 2002 MT 16, ¶ 18, 308 Mont. 175, ¶ 18, 40 P.3d 391, ¶ 18.  In support of his argument that his appellate counsel should have raised a conflict of interest claim, DuBray established that trial counsel Lynch had previously represented State witness Keith on an unrelated matter.  DuBray contends this resulted in inadequate cross-examination of Keith by Lynch.  However, DuBray did not establish that Lynch represented him and Keith concurrently, or that Lynch represented Keith on any matter which related in any way to DuBray's criminal trial.  Moreover, Olson's affidavit in response to the petition for postconviction relief states the defense team discussed Lynch's prior representation of Keith with DuBray, who told them he did not wish to discharge Lynch merely because Lynch had previously represented Keith.

¶34    In asserting that his appellate counsel should have argued he was deprived of his right to be present at all critical stages of the proceedings, DuBray advances *State v. Musgrove*, 178 Mont. 162, 582 P.2d 1246 (1978).  In that case, the defendant was not present when the jury was taken to the place where the charged events had taken place.  The controlling statute, § 95-1912, RCM (1947), provided that no person could speak or otherwise communicate with the jury on any subject in connection with the trial at a jury view.  During the viewing in that case, the county attorney answered several questions by jurors concerning subjects such as the location of witnesses and the victim's body.  We reversed, based on the occurrence of proceedings which amounted to the taking of testimony at the jury view.

*Musgrove*, 178 Mont. at 170, 582 P.2d at 1251.

¶35    In the present case, during the jury's deliberations, the jury foreman approached the bailiff to report that one of the jurors claimed to be psychic.  The District Court met with counsel and the foreman, who told the court there was no problem with any of the jurors and the juror who had informed two other jurors that she was a psychic was not the reason the jury had yet to reach a verdict.  The court then conferred with counsel outside the foreman's presence, and finally met with counsel and the foreman again, instructing the foreman to return to the jury room and allow deliberations to move forward.   *DuBray I*, ¶ 118. DuBray's counsel waived DuBray's presence at these discussions, which were on the record. DuBray has not alleged proceedings occurred outside his presence which amounted to the taking of testimony and, therefore, *Musgrove* does not support his position.

¶36    More recently, in *State v. Riggs*, 2005 MT 124, 327 Mont. 196, 113 P.3d 281, a defendant alleged the district court violated his right to be present at all critical stages of trial—under both the United States Constitution and the Montana Constitution—by speaking with two jurors outside his presence. *Riggs*, ¶ 42.  The defendant based his arguments on the right to be present under both the federal and the Montana constitutions.  We discussed at some length the importance of the constitutional right to be present at critical stages of criminal proceedings. *Riggs*, ¶¶ 46-52.  We reasoned, however, that the defendant had made no persuasive claim of prejudice arising out of the episodes at which he was not present.  We noted that the interactions between the judge and jurors were brief interludes in a complex trial, the defendant had no role to play at either, and, in each instance, defense counsel was

consulted and consented to the court's approach. *Riggs*, ¶ 54 (citations omitted).

¶37 Similarly, here, the trial record establishes that interactions between the court and the jury foreman concerning the alleged psychic juror were brief interludes in a complex, month-long trial, and defense counsel consented to the court's approach in addressing the foreman's concerns. While DuBray claims that, had he been present, he might have demanded that his attorneys act differently, such a claim is pure speculation, especially in light of the fact that he does not contest Olson's record statement that DuBray deferred to him on such matters anyway.

¶38 We hold DuBray has not established error in the District Court's denial of his claim that his counsel on direct appeal was ineffective in failing to raise the issues concerning attorney conflict of interest and DuBray's absence at critical stages of trial.

ISSUE 5

¶39 **Did the District Court properly deny DuBray's claim that he is entitled to a new trial based upon newly discovered evidence?**

¶40 DuBray contends a letter he received in 2003 from John Cameron, the lead detective in the underlying case which resulted in his 1999 convictions, constitutes new evidence entitling him to a new trial. He attached a copy of the letter to his petition for postconviction relief.

¶41 The five-part test for whether a new trial should be granted based on newly-discovered evidence is:

(1) The evidence must have been discovered since the defendant's trial;

12

(2) The failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part;

(3) The evidence must be material to the issues at trial;

(4) The evidence must be neither cumulative nor merely impeaching; and

(5) The evidence must indicate that a new trial has a reasonable probability of resulting in a different outcome.

*Clark*, ¶ 34.

¶42 We observe that the primary thrust of Cameron's letter to DuBray was to obtain any information DuBray was willing to share on another, unsolved, case. Cameron also wrote:

> I always wanted to sit down with you when this mess was done, and pick your brain. . . . I really wanted to hear the real story of what happened that night in 1986. I know that I got some of it right but there is always more to the story and I would love to hear it.

DuBray contends this letter impeaches Cameron in that Cameron "wants the real story because he only got some of it right." The District Court determined Cameron's letter does not satisfy parts (4) and (5) of the *Clark* test for a new trial based on newly-discovered evidence.

¶43 The only use of Cameron's letter in a retrial would have been to impeach Cameron's confidence in his investigation. Furthermore, given that the defense conducted a lengthy attack on Cameron's objectivity at trial and advanced a trial theory that DuBray was charged based on rumor and innuendo, the letter would have been merely cumulative. Finally, Cameron's letter merely asks DuBray to fill in missing details surrounding the crimes. Nothing in the letter indicates or suggests in any way that a new trial in which the letter was

13

admitted as evidence would have a reasonable probability of resulting in a different outcome.

¶44    We hold the District Court did not abuse its discretion in denying DuBray's motion for a new trial based on new evidence.

¶45    Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE
/S/ BRIAN MORRIS