FILED

August 14 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0763

DA 13-0763

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 242

CODY WILLIAM MARBLE,

      Petitioner and Appellant,

  v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
                 In and For the County of Missoula, Cause No. DV 10-1670
                 Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Colin M. Stephens (argued), E. Lars Phillips (argued), Smith
           & Stephens, P.C., Missoula, Montana

           Brendan McQuillan, Montana Innocence Project, Missoula, Montana

      For Appellee:

           Timothy C. Fox, Montana Attorney General, Tammy K Plubell (argued),
           Assistant Attorney General, Helena, Montana

           Kristen H. Pabst, Missoula County Attorney, Missoula, Montana

                              Submitted on Briefs:  February 11, 2015
                                        Argued:  May 20, 2015
                                        Decided:  August 14, 2015

Filed:

                                  _____
                                            Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1     Cody Marble appeals the Fourth Judicial District Court's denial of his petition for postconviction relief (PCR). This case has a lengthy history. In 2002, Marble was convicted of sexual intercourse without consent. The victim, then thirteen-year-old Robert Thomas, testified at Marble's trial that Marble forcibly engaged in anal sexual intercourse with him in the shower at the Missoula County Detention Center where both boys were temporary inmates for juvenile offenses. In 2010, Thomas recanted his accusations in writing. Based upon those recantations, Marble petitioned for postconviction relief seeking, among other things, a new trial. The District Court denied the petition. Marble appeals. We reverse the order of the District Court and remand for proceedings in accordance with this Opinion.

**ISSUES**

¶2     We restate the issues before the Court as follows:

¶3     Did the District Court err in predicating its decision upon the concurring opinion in *State v. Beach*, 2013 MT 130, 370 Mont. 163, 302 P.3d 47 (*Beach II*[1])?

¶4     If reliance on the *Beach II* concurrence was error, what test must a district court employ in reviewing a petition for postconviction relief based upon newly discovered evidence and filed within one year of discovery of such evidence?

---

[1] As we have previously designated *Beach v. State*, 2009 MT 398, 353 Mont. 411, 220 P.3d 667 as *Beach I*, we designate our opinion in *State v. Beach*, 2013 MT 130, 370 Mont. 163, 302 P.3d 47 as *Beach II*.

2

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5　In 2002, seventeen-year-old Cody Marble spent several weeks in Pod C of the Missoula County Detention Center (MCDC) with seven other boys, aged 13 to 18. According to MCDC taped footage and eyewitness testimony, on the evening of March 10, 2002, between 9:00 p.m. and 9:45 p.m., while at least four other pod mates were gathered in the common area just outside the showers, Thomas and Marble voluntarily entered a shower stall together. Approximately ten minutes later, they left the shower area and Thomas went to his cell just prior to the 10:00 p.m. lights out deadline. Thomas later claimed that during the ten minutes he was in the shower stall with Marble, Marble told him to remove his pants and grab his ankles. Thomas claimed that after being threatened if he refused, Thomas complied at which time Marble had anal sexual intercourse without consent with Thomas. Thomas asserts that as they left the shower area, Marble threatened him with bodily harm again and then instructed him to tell the others that it was just a joke and that Marble had not sodomized him. Thomas did not report the alleged assault to the MCDC staff.

¶6　On March 13, both boys were released from MCDC and went home to their respective families. On March 21, 2002, Marble was charged with felony sexual intercourse without consent after other Pod C inmates reported to the Detention Center authorities that Marble had raped Thomas in the showers on March 10. Later, those same inmates and Thomas testified against Marble at trial. Marble asserted the rape never occurred and that he was the victim of a malicious set-up by other boys in the pod, including Thomas. On November 22, 2002, a jury found Marble guilty. In January 2004, Marble was sentenced to twenty years, with fifteen suspended.

¶7 Marble has consistently maintained his innocence since he was accused, and his case has been before this Court on multiple occasions. *See, e.g., State v. Marble*, 2005 MT 208, 328 Mont. 223, 119 P.3d 88, *Marble v. State*, 2007 MT 98, 337 Mont. 99, 169 P.3d 1148, and *State v. Marble*, 2010 MT 210N.[2]

¶8 In the late fall of 2009, Marble contacted the Montana Innocence Project. Marble had heard rumors that Thomas, who was serving time for statutory rape, was telling other inmates that Marble did not rape him. Marble asked the Innocence Project to contact Thomas and investigate. The Innocence Project interviewed Thomas approximately four times between December 23, 2009, and July 2010. Thomas verbally recanted his rape claim on each occasion but initially refused to provide a written statement.

¶9 In July 2010, Thomas handwrote the following recantation:

> 8 or so years ago when I was 13 at Missoula County Juvenile Detention Facility I was sitting at a table in the dayroom. There were three other people at the table. They told me to say that Cody Marble raped me. But this did not happen. And now today I want to come out and let it be known. I'm coming forward now because I'm in prison on a sex crime and know what it is like. So I don't want him to be charged with one when innocent. When I was in jail, I was the youngest & smallest and I was pressured into going along with it.

Thomas provided this letter to attorneys with the Montana Innocence Project. A few days later, an Innocence Project lawyer returned with a typed letter of recantation for Thomas's signature. This letter was more detailed than Thomas's earlier handwritten note. It unequivocally stated that the rape did not occur and that Thomas had participated in a conspiracy against Marble. Thomas made a handwritten correction to one of the statements

---

[2] *State v. Marble*, 2010 MT 210N, is a non-cite opinion that shall not be cited as precedent.

and initialed and dated the correction. He then signed and dated the typed letter and returned it to the Innocence Project lawyer.

¶10 Based upon these letters, on December 14, 2010, Marble filed a petition for postconviction relief, the denial of which is currently on review before us. The District Court ordered that Thomas be deposed. At both his deposition in January 2012 and later at the October 24, 2012 PCR hearing, Thomas testified that the rape did occur as he claimed in 2002 and that because the Innocence Project lawyers called him a liar, he recanted and told them what they wanted to hear. He also testified that he thought the Innocence Project might help him with his legal problems if he cooperated with them.

¶11 In November 2013, the District Court denied Marble's petition. The court predicated its decision upon the concurring opinion in *Beach II* and decided that Thomas's recantation did not "affirmatively and unquestionably establish" that Marble was innocent and therefore his petition for PCR failed. Marble filed a timely notice of appeal.

¶12 On April 7, 2014, while on parole, Thomas had an encounter with the Havre police that resulted in a 21-hour standoff ending with Thomas's suicide.

## STANDARD OF REVIEW

¶13 "We review a district court's denial of a petition for post-conviction relief to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct." *Beach v. State*, 2009 MT 398, ¶ 14, 353 Mont. 411, 220 P.3d 667 (*citing Heath v. State*, 2009 MT 7, ¶ 13, 348 Mont. 361, 202 P.3d 118). "We review discretionary rulings in post-conviction relief proceedings, including rulings related

to whether to hold an evidentiary hearing, for an abuse of discretion." *Beach*, ¶ 14; *Hamilton v. State*, 2010 MT 25, ¶ 7, 355 Mont. 133, 226 P.3d 588.

## DISCUSSION

¶14    *Did the District Court err in predicating its decision upon the concurring opinion in State v. Beach, 2013 MT 130, 370 Mont. 163, 302 P.3d 47 (Beach II)?*

¶15    Marble's petition for postconviction relief was brought under § 46-21-102(2), MCA. In its entirety § 46-21-102, MCA, provides:

> (1) Except as provided in subsection (2), a petition for the relief referred to in 46-21-101 may be filed at any time within 1 year of the date that the conviction becomes final. A conviction becomes final for purposes of this chapter when:
> (a) the time for appeal to the Montana supreme court expires;
> (b) if an appeal is taken to the Montana supreme court, the time for petitioning the United States supreme court for review expires; or
> (c) if review is sought in the United States supreme court, on the date that that court issues its final order in the case.
> (2) A claim that alleges the existence of newly discovered evidence that, if proved and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct for which the petitioner was convicted, may be raised in a petition filed within 1 year of the date on which the conviction becomes final or the date on which the petitioner discovers, or reasonably should have discovered, the existence of the evidence, whichever is later.

¶16    The State does not argue that Marble's petition was untimely, nor does it assert that Marble's awareness of inmate rumors triggered the one-year clock to begin running. Marble's representative—the Innocence Project—heard from Thomas for the first time on December 23, 2009, that the rape had not occurred. Marble filed his petition for PCR on December 14, 2010. Consequently, Marble's petition was not time-barred.

¶17    Marble asserted in the District Court that the newly discovered evidence consisting of Thomas's repeated recantations entitled him to a new trial. He maintained that his PCR

6

petition should be analyzed under § 46-21-102(2), MCA, and *State v. Clark*, 2005 MT 330, 330 Mont. 8, 125 P.3d 1099. The State argued that his claim for PCR relief should be treated as a substantive claim of actual innocence in accordance with the analysis set forth in the concurring opinion in *Beach II*, and should not be premised on *Clark*.

¶18 The District Court adopted the State's argument and conducted a lengthy analysis of Marble's claim of innocence under the *Beach II* concurrence. The court concluded that in making a substantive claim of innocence under § 46-21-102(2), MCA, Marble must not only raise doubt about his guilt, but must affirmatively and unquestionably establish his innocence. Consistent with its reading of the *Beach II* concurrence, the District Court rejected the contention that the five-part test articulated by this Court in *Clark* should figure in the court's analysis. Marble argues on appeal that the District Court erred in applying the test set forth in the *Beach II* concurrence to his PCR petition and rejecting the application of the *Clark* factors.

¶19 In Beach's 2008 petition for PCR, Beach claimed that newly discovered evidence established his "actual innocence." The district court reviewed the new evidence and determined that it was sufficient to warrant a new trial. The State appealed and this Court reversed the district court, holding that, as part of its analysis the district court was required to consider the evidence presented at Beach's original trial *together with* Beach's new evidence. We concluded that the district court erroneously reviewed the new evidence only. *Beach II*, ¶ 79. After considering both old and new evidence on appeal, we concluded that Beach's newly discovered evidence did not displace the original trial evidence and that the

7

new evidence was unreliable and failed to establish Beach's actual innocence. *Beach II*, ¶ 80.

¶20 The *Beach II* concurrence revisited the test for determining postconviction claims of "actual innocence" as set forth in *Beach I* and applied in *Beach II*. *Beach II*, ¶ 81 (McKinnon, J., concurring). Concluding that the *Beach I* test confused the applicable law, the concurrence reviewed the standards for both substantive and procedural innocence claims and set forth revised standards for each. The concurrence also addressed application of § 46-21-102(2), MCA, to postconviction cases and suggested that the statute was a codification of the requirements for a substantive claim of actual innocence, requiring a petitioner to "affirmatively and unquestionably establish his innocence, based upon reliable new evidence discovered within the twelve months preceding the filing of his petition and in light of the proof of his guilt at trial." *Beach II*, ¶ 131.

¶21 As indicated, Marble argues that the District Court should have analyzed his petition under the five-prong *Clark* test rather than the *Beach II* concurrence. In *Clark*, we reviewed a district court's denial of Clark's motion for a new trial (as opposed to a PCR petition). In 2003, Clark was convicted of sexually assaulting his stepdaughter. Shortly after the trial, the stepdaughter recanted much of her damning testimony. Clark moved for a new trial asserting that the recantation constituted new evidence. The district court denied his motion and several months later sentenced him and entered a written judgment. *Clark*, ¶¶ 13-15.

¶22 On appeal, we announced that the following test would be applied to motions for new trial predicated on newly discovered evidence:

To prevail on a motion for a new trial grounded on newly discovered

8

evidence, the defendant must satisfy a five-part test:
(1) The evidence must have been discovered since the defendant's trial;
(2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part;
(3) the evidence must be material to the issues at trial;
(4) the evidence must be neither cumulative nor merely impeaching; and
(5) the evidence must indicate that a new trial has a reasonable probability of resulting in a different outcome.

*Clark*, ¶ 34. We then remanded Clark's motion to the district court for reconsideration in accordance with the five-part test. *Clark*, ¶ 42.

¶23 Several months after *Clark* was decided, *Crosby v. State*, 2006 MT 155, 332 Mont. 460, 139 P.3d 832, came before the Court. In 1996, Crosby was convicted of sexual intercourse without consent. The victim, Crosby's then ten-year-old daughter, recanted her testimony in 2003. *Crosby*, ¶ 5. Crosby filed a petition for postconviction relief alleging that his daughter's recantation constituted new evidence. *Crosby*, ¶ 6. Following a PCR hearing, the district court denied Crosby's motion. *Crosby*, ¶¶ 7-8. On appeal, we concluded that the *Clark* test, originally developed to address a motion for a new trial, should apply to a petition for postconviction relief based upon newly discovered evidence. *Crosby*, ¶ 20. We reversed and remanded Crosby's case to the district court with instructions to apply the *Clark* test to determine whether Crosby was entitled to postconviction relief and a new trial. *Crosby*, ¶ 25. Since we decided *Crosby*, we have applied the *Clark* test in analyzing claims for postconviction relief based upon newly discovered evidence in two cases: *DuBray v. State*, 2008 MT 121, 342 Mont. 520, 182 P.3d 753 and *State v. Tyler*, 2009 MT 75, 349 Mont. 461, 204 P.3d 685.

¶24 Because we held in *Crosby* that the *Clark* test should apply in PCR cases, Marble argues the *Clark* test should likewise apply to his postconviction relief claim. The State counters, however, that applying *Clark* to claims for postconviction relief is incompatible with the exacting language of § 46-21-102(2), MCA, which allows a postconviction claim based upon newly discovered evidence, provided that the claim, "if proved and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct for which the petitioner was convicted." Section 46-21-102(2), MCA. The State points out that, by contrast, the fifth *Clark* factor requires only a finding that "a new trial has a reasonable probability of resulting in a different outcome." *Clark*, ¶ 34.

¶25 At oral argument, the State maintained that the disparity between the proof required under the PCR statute and that required by the fifth factor of the *Clark* test is justified in light of the fact that a PCR petitioner is saddled with a presumption of guilt, whereas a judgment of conviction has not yet been entered against the petitioner who files a motion for new trial following a verdict or finding of guilty but before the entry of a judgment of conviction. Thus, it argues, the test to be applied to PCR claims premised upon newly discovered evidence should require a more strenuous level of proof than that applied to a petitioner against whom a judgment of conviction has not yet been entered.

¶26 A defendant who has been convicted by a court or jury of a crime but against whom a final judgment of conviction and sentence has not yet been entered has a brief window of time within which to file a motion for new trial. Section 46-16-702(2), MCA, requires a defendant seeking a new trial to do so within 30 days following the verdict or finding of guilty. This window of time invariably closes before the imposition of a judgment of

conviction, given the statutory requirements of a presentence investigation, preparation of a report, and the scheduling and conduct of the sentencing hearing. Thus, as the State posits, a defendant seeking a new trial will do so before a final judgment of conviction and sentencing has been entered.

¶27    Section 46-16-701, MCA, provides that "[t]he granting of a new trial places the parties in the same position as if there had been no trial." This can occur because there is at that point no judgment of conviction to overturn. By contrast, a postconviction relief petitioner seeks relief well after his conviction has become final. Section 46-21-102(1)(a)-(c), MCA.

¶28    We agree with the State's argument. Although there is a paucity of case law on the topic, it stands to reason that a PCR petitioner is presumed guilty following the date upon which his conviction has become final, while a defendant who has timely requested a new trial and has not yet had a judgment of conviction and sentence entered against him does not yet carry with him the presumption of guilt and the associated burdens that accompany a final judgment of conviction.

¶29    Because the PCR petitioner is presumed guilty following the entry of a judgment of conviction, his burden when seeking postconviction relief based upon newly discovered evidence should be greater than that imposed upon a petitioner seeking a new trial under § 46-16-702, MCA. Our conclusion here is underscored by the precision of the language of § 46-21-102(2), MCA, quoted above. Moreover, we conclude we have erred in equating a motion for new trial with a postconviction relief claim based upon newly discovered evidence because, while a motion for new trial does—by definition—contemplate a new

11

trial, postconviction proceedings are in no way tethered to such relief. An examination of the postconviction relief statutes illustrates this point.

¶30 Section 46-21-201, MCA, describes the proceedings to be undertaken upon the filing of a PCR petition. Unless the petition and the case records conclusively show that the petitioner is not entitled to relief, the court shall cause notice of the petition to be sent to the county attorney and the attorney general, who can then determine whether to respond to the petition. "Following its review of the responsive pleading, the court may dismiss the petition as a matter of law for failure to state a claim for relief or it may proceed to determine the issue." Section 46-21-201(1)(a), MCA. If the court determines that a hearing is required, or if the interests of justice require, it can order the office of the state public defender to assign counsel for a qualifying petitioner. Section 46-21-201(2), MCA. Thereafter, the court may for good cause grant either party leave to use discovery procedures; it may also receive proof of affidavits, depositions, oral testimony, or other evidence, and may order the petitioner brought before the court for hearing. Section 46-21-201(4) and (5), MCA. Finally, if the court finds in favor of the petitioner, "it shall enter an appropriate order with respect to the judgment or sentence in the former proceedings and any supplementary orders as to reassignment, retrial, custody, bail, or discharge that may be necessary and proper. If the court finds for the prosecution, the petition must be dismissed." Section 46-21-201(6), MCA.

¶31 The foregoing statutory provisions illustrate that a court entertaining a petition for postconviction relief has multiple arrows in its quiver. While a court may order a new trial, it clearly has the statutory right to dismiss the petition before or after briefing or proceed to

12

"determine the issue" with or without a hearing. A request for a new trial in a petition for postconviction relief based upon newly discovered evidence, while permissible, does not recast a PCR proceeding as a petition for a new trial, nor does it change or limit the options available to the district court. We therefore erred in tying a PCR court to the *Clark* test, and in particular to factor five of the *Clark* test, which permits a defendant "[t]o prevail on a motion for a new trial grounded on newly discovered evidence" where the evidence indicates "that a new trial has a reasonable probability of resulting in a different outcome." *Crosby*, ¶ 19. This test is inconsistent with the standard set forth in § 46-21-102(2), MCA, and undercuts the wide discretion available to a district court considering a PCR petition under § 46-21-201, MCA. Accordingly, we hereby overrule *Crosby*, *DuBray*, and *Tyler* to the extent that they apply the fifth factor of the new trial *Clark* test to a petition for postconviction relief that is based upon newly discovered evidence.

¶32 We must next determine whether the District Court erred in predicating its decision on the *Beach II* concurring opinion, and if so, what test should be applied to petitions for postconviction relief premised upon newly discovered evidence. We start with the proposition that newly discovered evidence can take varying forms. The *Beach II* concurrence concludes at ¶ 131 that a petitioner seeking relief under § 46-21-102(2), MCA, must "affirmatively and unquestionably establish his innocence, based on reliable new evidence . . . ." While this test may be well-suited to exonerating evidence that is scientific and absolute in nature, such as DNA, it is not workable in situations in which the newly discovered evidence is of a different type, such as perjured or new alibi evidence, a confession by a third-party, or—as here—recantation evidence. Powerful new evidence of

13

this type could certainly establish that the defendant did not commit the crime of which he was convicted, but it will not, standing alone, "unquestionably establish his innocence." Rather, as § 46-21-102(2), MCA, commands, the new evidence must be "proved and viewed in light of the evidence as a whole." As Marble argues, if a petitioner is able to unquestionably establish his innocence through new evidence, there would be no reason to compare the new evidence to the proof of guilt at trial. Moreover, such a rigid test fails to take account of the above-noted provisions of the PCR statutes, which allow a district court to order briefing, further discovery, and/or a new trial. These statutory options allow a court to explore *whether* the petitioner can establish his innocence, and are inconsistent with the extraordinarily high standard set by the *Beach II* concurrence. We accordingly conclude that the test announced in the *Beach II* concurrence, insofar as it requires a petitioner to "affirmatively and unquestionably establish his innocence, based upon reliable new evidence," is not suited to the quantum of proof required of a postconviction relief petitioner seeking relief under § 46-21-102(2), MCA, and we repudiate ¶ 131 of the concurrence. We hold therefore that the District Court's conclusion of law applying the *Beach II* concurrence to the denial of Marble's postconviction petition was incorrect.

¶33 The Dissent maintains that we err in refusing to apply the principles articulated in *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851 (1995), as explained in Justice McKinnon's *Beach II* concurrence. We disagree. The *Beach II* concurrence instructs that a *Schlup* petitioner must allege the occurrence of a constitutional violation at his first trial coupled with the presentation of new evidence of innocence. *Beach II*, ¶ 96. As illustrated in ¶ 54 and the accompanying footnote of Justice McKinnon's Concurrence and Dissent, in each of

14

our cases in which *Schlup* was invoked, the defendant alleged the occurrence of a constitutional error during his first trial, such as improper instructions to the jury or ineffective assistance of trial counsel. Marble does not allege that a constitutional violation occurred at his first trial; therefore, *Schlup* is not applicable. We proceed to determine what test should be applied to Marble's petition.

¶34    *What test must a district court employ in reviewing a petition for postconviction relief based upon newly discovered evidence and filed within one year of discovery of such evidence?*

¶35    Section 46-21-102(2), MCA, provides that an allegation that newly discovered evidence, "if proved and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct for which the petitioner was convicted" may be raised in a postconviction petition. The statute merely allows the filing of the petition; it does not in any way define or circumscribe whether the proof must be made to the district court, whether the petitioner must meet a certain threshold before the court can consider expanding the proceedings to include a hearing or a new trial, or whether such proof must be made on retrial. As noted, the implementing provisions set forth at § 46-21-201, MCA, likewise do not delineate how and to whom the proof must be made, and instead accord the court multiple options for how it may proceed.

¶36    In construing a statute, it is incumbent upon the court to "declare what is in terms or in substance contained therein, not to insert what has been omitted . . . ." Section 1-2-101, MCA. The wide range of alternative proceedings set forth in § 46-21-201, MCA, reflect a legislative intent to place the method of resolving a petition for postconviction relief in the hands of the district court. We therefore conclude that a district court presented with a

15

postconviction petition based upon newly discovered evidence shall utilize the very test set forth in § 46-21-102, MCA. It shall determine whether the "newly discovered evidence . . ., if proved and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct" for which he or she was convicted. In making this determination, a district court may seek guidance from our case law addressing various forms of newly discovered evidence, such as our precedent with respect to recantations, whether set forth in a case involving a motion for new trial or one addressing a PCR petition. *See, e.g.*, *Clark* and *Crosby*. While we conclude herein that we erred in applying the fifth factor of the *Clark* new trial test to a PCR petition predicated upon newly discovered evidence, the first four factors of the *Clark* test (*see* ¶ 21) also remain a viable resource when determining whether the newly discovered evidence should be considered.

¶37 It will be up to the district court to determine within the options provided in § 46-21-201, MCA, whether the proof and evidence will be weighed by the court itself, whether discovery and a hearing should be conducted, whether the matter should be remanded for a new trial, and even whether the defendant should be released on bail or discharged. And if the court finds for the prosecution, the petition may be dismissed. Section 46-21-201(4) through (6), MCA. On appeal, we will review the court's findings of fact for clear error and its conclusions of law for correctness, and will review discretionary rulings for an abuse of discretion. *Hamilton*, ¶ 7. It will be incumbent upon the court—however it elects to conduct the postconviction proceedings—to issue an order setting forth the facts and legal rationale supporting its decision.

16

¶38    The statutory test we announce today does not run afoul of our postconviction relief precedent. This Court has reviewed on appeal literally hundreds of district court dispositions of petitions for postconviction relief, many by way of memorandum opinion. While we have on occasion reversed the district court's denial of a petition for postconviction relief and remanded for an evidentiary hearing (*see Heath*, ¶ 27, in which we remanded for a hearing in view of the "unique circumstances" occasioned by an IAC claim involving trial counsel who had since died), we have by and large declined to dictate to the district court which of the many statutory alternatives it should utilize when considering the merits of a postconviction petition. The constant in our decisions is the requirement that a postconviction petition must "identify all facts supporting the grounds for relief set forth in the petition and have attached affidavits, records, or other evidence establishing the existence of those facts." Section 46-21-104(1)(c), MCA. We have held that "[m]ere conclusory allegations are insufficient to support the petition." *Beach*, ¶ 16; *Hamilton*, ¶ 10. We have also reaffirmed the statutory right of the district court to dismiss a PCR petition without ordering a response if the petition and records "conclusively show that the petitioner is not entitled to relief" as stated in § 46-21-201(1)(a), MCA, and the court's right to dismiss a petition without holding a hearing if the petition fails to satisfy the procedural threshold set forth in § 46-21-104(1)(c), MCA. *Hamilton*, ¶¶ 10-11. Otherwise, a court is free to invoke any or all of the procedural tools at its disposal by virtue of the language of § 46-21-201, MCA, when determining the disposition of a petition for postconviction relief predicated upon newly discovered evidence.

**CONCLUSION**

17

¶39 For the foregoing reasons, we conclude that the District Court erred in grounding its rejection of Marble's PCR petition upon the *Beach II* concurrence. We conclude that a district court shall apply the statutory test set forth in § 46-21-102(2), MCA, in determining the disposition of a timely filed petition for postconviction relief based upon newly discovered evidence, and shall do so in accordance with the provisions of §§ 46-21-102(2) and -201, MCA, and this Opinion. Because the District Court erred in narrowly circumscribing the relief available to Marble premised upon the *Beach II* concurrence, we reverse and remand for reconsideration of Marble's petition under the standards announced herein.

¶40 Reversed and remanded.

/S/ PATRICIA COTTER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ MICHAEL HAYWORTH
Judge Michael Hayworth sitting for Chief Justice Mike McGrath

Justice Jim Rice, concurring in part and dissenting in part.

¶41 I concur with the Court's adoption of the statutory language in § 46-21-102, MCA, as the standard to be applied to petitions for postconviction relief involving claims of newly discovered evidence, that standard being whether the new evidence "if proved and viewed in

18

light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct." Opinion, ¶ 35. However, because findings of fact have already been entered by the District Court, I would proceed to conduct the legal analysis and apply the new standard to those facts. Indeed, in his opening brief, Marble requests that this Court apply the legal standard to the facts, and reverse his conviction. Alternatively, Marble asks that we remand for application of the *Clark* test, as we did in *Clark*. However, as we explained there, remand was necessary for application of the new legal test only because of "our inability to glean from the record the District Court's reasons for denying the motion for a new trial." *Clark*, ¶ 42. Here, we have no such deficit, as the District Court entered extensive findings of fact. As the State's counsel noted during oral argument, "the facts are the facts," and they will not change under application of a different legal standard. Since the facts are already determined in this case and we would ultimately review the District Court's legal conclusions for correctness in any subsequent appeal, there is no legal reason requiring a remand for the District Court to apply the new standard in the first instance.

¶42 The following factual statements are all taken from the District Court's detailed findings. Thomas was a "credible and believable witness," both in the original trial and the post-conviction hearing. Thomas' sworn testimony in this matter, given over a period of 10 years from the original trial, to his deposition and through the postconviction proceeding, was consistent: Marble raped him in the shower as alleged in the Information. Thomas never varied from this account in his multiple statements given under oath.

¶43 Thomas was contacted by the Montana Innocence Project (MIP), who was representing Marble. When meeting with Thomas, MIP did not initially discuss Marble's

19

case "and it was not until later meetings that [MIP lawyer] Mansch even mentioned Marble." Thomas was willing to continue meeting with Mansch because Thomas believed MIP was going to help him with his own legal problems and that Mansch would help him get into the military. Mansch "pressed hard" for Thomas to recant his testimony against Marble. Thomas refused to sign an affidavit recanting his testimony that MIP prepared for his signature and refused to recant under oath during the entire time.

¶44 Mansch told Thomas that if he signed a recantation statement, then, in Thomas' words, "it [would] probably be over with" and "[t]hey shouldn't need to hear from me again." Thomas was not advised of his rights to silence or to counsel. Thomas wrote out a short recantation and signed an unsworn recantation statement that had been prepared for him by MIP because he believed that by "giving Mansch what Mansch wanted," Thomas would obtain help for his own case and with getting into the military. He also signed it "because they didn't believe me, kept calling back talking to me, calling me a liar when I told them the truth. So I just told them what they wanted to hear. . . . Badgered into it." Thomas had also been transferred to the same facility as Marble and been approached by a friend of Marble's about his testimony.

¶45 Subsequently, under oath, both in his deposition and in the post-conviction hearing, Thomas acknowledged that his recantation statements given to MIP were false and were lies. Thomas believed he "would not get into any trouble" for making a false statement if his statement was not given under oath. Mansch's "focus on helping Marble" kept Mansch from seeing that Thomas' recantation "was false and given as part of [Thomas'] attempt to obtain the help of Mansch."

20

¶46 "[S]ignificant evidence" was introduced at Marble's trial to support the jury's decision that Marble was guilty. Marble was "very, very interested" in taking the plea offer made by the prosecution before Marble's trial but he did not do so because of his father's strong feelings against Marble pleading guilty to an offense involving alleged homosexual behavior.

¶47 The only new evidence is Thomas' unsworn recantation. Although the recantation could be used in a new trial for Marble, the District Court concluded that "[t]he evidence leading up to the signed recantation by [Thomas] is devastating" to its value, including the "circumstances of persistence under which it was obtained, the narrow manner (not sworn) in which it was finally consented to be given and [Thomas'] motive for making the recantation." The District Court determined that the recantation "is not reliable evidence and does not raise a doubt about the guilt of Marble, either on its own or in light of the proof of Marble's guilt adduced at the time of Marble's trial." Further, as Marble's counsel acknowledged during oral argument, the law requires that recantations are to be "viewed with great suspicion." *Clark*, ¶ 37.

¶48 Applying the new legal standard, I would conclude that the factual record clearly demonstrates that the new evidence, that being Thomas' unsworn recantation, fails to "establish that the petitioner did not engage in the criminal conduct." Opinion, ¶ 35; § 46-21-102, MCA. I would affirm the District Court.

/S/ JIM RICE

21

Justice Laurie McKinnon, concurring in part and dissenting in part.

¶49    It is difficult for me to know where to begin.

¶50    First, by "announc[ing]" the "statutory test" as the new test to be utilized by district courts presented with post-judgment claims of newly discovered evidence, Opinion, ¶ 38, the Court has said nothing to assist the trial courts with their interpretation of § 46-21-102(2), MCA, and has discarded valuable, well-established precedent that was properly understood and applied by the District Court.  Second, although we specifically overrule *State v. Tyler*, 2009 MT 75, 349 Mont. 461, 204 P.3d 685, *DuBray v. State*, 2008 MT 121, 342 Mont. 520, 182 P.3d 753, and *Crosby v. State*, 2006 MT 155, 332 Mont. 460, 139 P.3d 832, because those decisions applied the test articulated in *State v. Clark*, 2005 MT 330, 330 Mont. 8, 125 P.3d 1099, to postconviction claims, Opinion, ¶ 31, we then reinject *Clark* factors into the postconviction scenario by suggesting that a district court "may seek guidance" from *Clark* and *Crosby*, Opinion, ¶ 36.   Third, our analysis fails to adequately grasp significant considerations underlying claims of actual innocence, which the legislature sought to protect through its enactment of § 46-21-102(2), MCA, and misconstrues the concurring opinion in *State v. Beach*, 2013 MT 130, ¶¶ 81-139, 370 Mont. 163, 302 P.3d 47 (McKinnon, J., with Baker, Rice, and Simonton, JJ., concurring) ("*Beach II* concurrence").  Fourth, our decision ignores our own clear precedent interpreting § 46-21-102(2), MCA, established prior to this Court's misguided decisions of *Beach v. State*, 2009 MT 398, 353 Mont. 411, 220 P.3d 667 ("*Beach I*"), *Tyler*, *DuBray*, *Crosby*, and *State v. Abe*, 2001 MT 260, 307 Mont. 233, 37 P.3d 77.  Fifth, by announcing a new, lesser burden for obtaining relief, we implicate serious

concerns of fairness and equity regarding our resolution of prior claims, particularly those of Barry Beach. Sixth, we violate the well-established rule, indispensable to the administration of justice, that a question once deliberately examined and decided should be considered closed and settled as to further argument, and not subject to a different construction based upon a different composition of this Court.

¶51 Perhaps the starting point for any discussion should be the *Beach II* concurrence. I wrote the *Beach II* concurrence to clarify the confusion in our law resulting from *Beach I*, *Tyler*, *DuBray*, *Crosby*, and *Abe*. Nothing in the *Beach II* concurrence "revised" the standards for evaluating substantive and procedural innocence claims. *See* Opinion, ¶ 20. Rather, the *Beach II* concurrence reaffirmed our prior clear and unmistakable adoption of *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851 (1995), *Herrera v. Collins*, 506 U.S. 390, 113 S. Ct. 853 (1993), and the corresponding analysis for evaluating post-judgment claims of newly discovered evidence. *Beach II* concurrence, ¶¶ 95-96, 105, 119, 123; *see State v. Pope*, 2003 MT 330, 318 Mont. 383, 80 P.3d 1232; *State v. Redcrow*, 1999 MT 95, 294 Mont. 252, 980 P.2d 622. Moreover, in adopting *Schlup* and *Herrera* to guide our consideration of claims filed pursuant to § 46-21-102(2), MCA, we specifically expanded our reliance on federal jurisprudence and rejected the argument that our existing postconviction jurisprudence was sufficient for evaluation of actual innocence claims. *See Pope*, ¶ 88 (Rice, J., dissenting). The Court now rejects a test that has been applied since 1999, finding it to be "rigid" and "not suited to the quantum of proof required of a postconviction relief petitioner seeking relief under § 46-21-102(2)." Opinion, ¶ 32. Aside

23

from the Court's failure to state what that "quantum of proof" is, it is my opinion that a higher burden of proof and a clear standard for evaluating post-judgment claims, whether characterized as "rigid" or not, are necessary to protect the finality of judgments and to ensure consistent and fair evaluation of claims.

¶52 The distinctions articulated in Montana's case law between procedural and substantive claims of actual innocence, and the corresponding burdens of proof, are well-reasoned and should be maintained. Preliminarily, while a majority of this Court did indeed agree that "the petitioner must affirmatively and unquestionably establish his innocence" in order to prevail on a substantive claim of actual innocence, *Beach II* concurrence, ¶ 131, we clearly stated that § 46-21-102(2), MCA, also allowed for a procedural claim of actual innocence, pursuant to *Schlup*, which imposed a lesser burden on the petitioner for obtaining relief. We observed that the language in § 46-21-102(2), MCA, requiring newly discovered evidence that "would establish" that the petitioner did "not engage in the criminal conduct" for which the petitioner was convicted, appeared to be a codification by the legislature, although "perhaps not intentionally," of the substantive claim of actual innocence in *Herrera*. *Beach II* concurrence, ¶ 131. However, nothing in the *Beach II* concurrence extinguished the ability to raise, pursuant to § 46-21-102(2), MCA, a procedural claim of actual innocence under *Schlup*. Thus, the Court's conclusion that requiring the petitioner to "affirmatively and unquestionably establish his innocence" is an intolerably "rigid test" misconstrues the analysis required by the *Beach II* concurrence, as it

24

only considers the "extraordinarily high" standard applicable to a substantive claim of actual innocence.

¶53    When first charged with a crime, a person is entitled to a presumption of innocence and may insist that his guilt be proven beyond a reasonable doubt. *Herrera*, 506 U.S. at 398, 113 S. Ct. at 859. Once a defendant has been convicted of the offense with which he has been charged, he is no longer entitled to the presumption of innocence. *Herrera*, 506 U.S. at 399, 113 S. Ct. at 860. A presumption of guilt now attaches as a result of his conviction and strips him of many of the constitutional safeguards attendant to the presumption of innocence. Although convicted of a crime, a defendant may nevertheless mount a multitude of challenges to his conviction. One such challenge is a claim of newly discovered evidence filed pursuant to § 46-21-102(2), MCA. Because the petitioner is no longer cloaked with the presumption of innocence, however, the existence of newly discovered evidence must be evaluated in light of the principles guiding our analysis of an alleged constitutional error. The distinctions drawn by the United States Supreme Court between substantive claims of actual innocence under *Herrera* and procedural claims of actual innocence under *Schlup* are logical and consistent with fundamental principles of criminal law. If a petitioner has received an error-free trial, his conviction should rightfully stand, unless he produces conclusive evidence of his actual innocence. *Herrera*, 506 U.S. at 417, 113 S. Ct. at 869. With developments in criminal investigation and forensic evidence, we have recognized that a petitioner could conceivably offer evidence definitively proving his actual innocence, irrespective of any constitutional error at his trial or sentencing. Such a substantive or

"freestanding" claim of actual innocence was recognized in *Herrera*, *Pope*, and *Redcrow*, although the showing necessary to establish such a claim was never defined. The Court stated only that it would be "extraordinarily high" and that the showing would have to be "truly persuasive," because when a petitioner makes a substantive, freestanding claim of actual innocence, he is claiming that he is entitled to relief despite a constitutionally valid conviction. *Herrera*, 506 U.S. at 417, 113 S. Ct. at 869; *Pope*, ¶ 48; *Redcrow*, ¶ 33. Accordingly, a *Herrera* petitioner is entitled to complete exoneration of the charges because he has conclusively established his actual innocence.

¶54    A petitioner unable to conclusively establish a substantive, freestanding claim of actual innocence may nevertheless obtain postconviction review of an alleged constitutional error, if his newly discovered evidence is such that the court cannot have confidence in the outcome of the trial given the allegation of constitutional error. The constitutional error may be any that could normally be raised in a petition for postconviction relief, since successfully raising a "gateway" claim under *Schlup* entitles the petitioner to review of his constitutional

error in a postconviction proceeding.[1]  In *Pope*, ¶ 49, we adopted the *Schlup* analysis and confirmed that the threshold for a procedural claim of innocence is lower than *Herrera* and does not itself provide an independent basis for relief.  Most importantly, a *Schlup* petitioner faces a lower threshold because he asserts constitutional error at trial, and his conviction is accordingly not entitled to the same degree of respect as one concededly free of the taint of constitutional error.  *Schlup*, 513 U.S. at 315-16, 115 S. Ct. at 861.  Therefore, a petitioner asserting both actual innocence and constitutional error has less of a burden than a petitioner who claims only actual innocence.  While a petitioner making a *Herrera* claim must present evidence of actual innocence so strong that his sentence would be "'constitutionally intolerable' *even if* his conviction was a product of a fair trial," a petitioner making a procedural claim need only present evidence of innocence strong enough "that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ."  *Schlup*, 513 U.S. at 316, 115 S. Ct. at 861 (emphasis in original).  The *Schlup* actual innocence inquiry does not concern itself with the merits of the constitutional error, but is conducted from the perspective of whether, in light

---

[1] In *Pope*, ¶ 55, the constitutional error alleged was that the jury had been improperly instructed that Pope could be found guilty of sexual intercourse without consent with either A.J. or M.J., thus placing into question Pope's right to a unanimous verdict.  Pope also alleged that prosecutorial misconduct and ineffective assistance of counsel denied him the right to a fair trial.  *Pope*, ¶ 55. These allegations of constitutional error were reviewed in a subsequent postconviction proceeding following this Court's decision that Pope presented sufficient evidence of his actual innocence to place in doubt the reliability of his conviction.  *Pope*, ¶ 70.  In *Redcrow*, ¶¶ 35-36, the constitutional error alleged was ineffective assistance of trial counsel and that her co-defendant was the real killer. This Court found that Redcrow had not demonstrated her actual innocence in light of her confession to law enforcement.  *Redcrow*, ¶ 37.  In *Schlup*, the constitutional claim was that the ineffective assistance of counsel and the withholding of evidence by the prosecution denied him the full

of the newly discovered evidence and if the constitutional error had not occurred, it is more likely than not that no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 327-29, 115 S. Ct. at 867-68; *Pope*, ¶ 58; *Redcrow*, ¶ 33.

¶55    The Court states, without proper analysis, that "there would be no reason to compare the new evidence to the proof of guilt at trial" if a petitioner can "unquestionably establish his innocence." Opinion, ¶ 32. However, as the statute correctly recognizes, under either a substantive, freestanding claim or a procedural claim, the new evidence must always be compared to the evidence adduced at trial. More to the point, in *Herrera*, the Court evaluated Herrera's substantive, freestanding claim of actual innocence by considering the affidavits relied upon by Herrera in light of the evidence presented at trial by the prosecution. The *Herrera* court remarked that the affidavits were inconsistent with one another, the affiants were not subject to cross-examination, the individual identified as the guilty party was deceased, and, for the most part, the affidavits consisted of hearsay. *Herrera*, 506 U.S. at 417-18, 113 S. Ct. at 869-70. The *Herrera* court further noted that at trial, the prosecution had produced two eyewitness statements and a written statement by Herrera himself, all of which indicated he was the guilty party. After considering the newly discovered evidence in light of the evidence produced at trial, the court concluded that Herrera's showing of evidence fell far short of that required of a defendant convicted of a crime following a trial free of constitutional error. *Herrera*, 506 U.S. at 418-19, 113 S. Ct. at 870. Similarly, in

"panoply of protections afforded to criminal defendants by the Constitution." *Schlup*, 513 U.S. at

*Pope*, pursuant to § 46-21-102(2), MCA, this Court considered Pope's newly discovered evidence in light of all the evidence produced at trial and concluded that Pope had established his procedural claim and was entitled to a postconviction proceeding to evaluate the alleged constitutional error. We stated:

> The complete DNA report tends to deflate the State's evidence that Pope had intercourse with M.J. While it does not exclude the possibility that he had intercourse with M.J., he cannot be included as a sperm donor based upon the DNA results. The DNA results indicate the presence of a third unknown party. Streeter testified that the unknown party, whose presence is indicated by the DNA test, could have been the type A blood source that Long attributed to Pope. Moreover, in light of the DNA evidence, Long's testimony and blood type testing is inconclusive. The DNA evidence topples the State's theory presented to the jury: "If you find that there was a substance in the vaginal fluid and in the panties, that had drained into the panties, you are going to find that that - - of the blood testing was done, the only possible contributor for that is the defendant, Vance Pope."

*Pope*, ¶ 60. Thus, this Court is simply wrong when we state that "there would be no reason to compare the new evidence to the proof of guilt at trial." Opinion, ¶ 32. Certainly, newly discovered evidence for both a substantive, freestanding claim of actual innocence or a procedural claim of actual innocence must always be evaluated in the context of the evidence adduced at trial. This is the only way of determining the significance and relevance of the new evidence. When the Montana Legislature enacted § 46-21-102(2), MCA, in 1997, *Schlup* and *Herrera* had already been decided. The statutory requirement that the newly discovered evidence be "viewed in light of the evidence as a whole" is a codification of *Schlup* and *Herrera*.

---

314, 115 S. Ct. at 860.

¶56 In my opinion, the principles articulated in *Schlup*, *Herrera*, *Pope*, and *Redcrow* are sound and in harmony with the important public policy of ensuring finality of state court judgments, which serves both the State's goal of rehabilitating criminal defendants and the State's legitimate punitive interests. To upset these principles and to remove an analytical framework allowing consistent evaluation of newly discovered evidence—not only consistent among the various trial courts, but consistent with rules and presumptions inherent in our criminal law—is to unsettle the expectations of consistency and finality held by victims, petitioners, and the State.

¶57 We state we are announcing a new "statutory test" and take comfort in the fact that we are only stating the rule as it has been written by the legislature. However, we have provided no guidance to the district courts and have again changed the rules in a complicated area of jurisprudence, despite attempts made by the *Beach II* concurrence to clarify those rules. We have failed to recognize consistent and well-reasoned Montana case law recognizing distinctions in claims, burdens of proof, and constitutional error regarding post-judgment claims of newly discovered evidence. We arguably have created issues concerning fairness and equity between those claims previously decided under the more "rigid" test and those now to be decided under a test "suited to the quantum of proof required of a postconviction relief petitioner"—whatever that means. Finally, *Clark* considerations are inappropriate to a post-judgment claim of newly discovered evidence. While I agree *Tyler*, *DuBray*, and *Crosby* should be overruled to the extent that they applied *Clark* to post-judgment claims of newly discovered evidence, and concur in that portion of the Opinion, I would not

30

simultaneously reinject *Clark* as "guidance" for the district courts in considering these claims. At the risk of being too brazen, this appears slightly inconsistent.

¶58    I dissent.

/S/ LAURIE McKINNON